**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| ACIMA DIGITAL, LLC, *et al.*, | |
| *Plaintiffs* | |
| v. | Case No. 4:24-cv-00662-SDJ |
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF ISSUES ................................................................................................. 3

BACKGROUND ................................................................................................................. 3

LEGAL STANDARDS ....................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I. This Court should dismiss this case for improper venue ........................................ 7

    II. Plaintiffs cannot obtain injunctive relief .............................................................. 9

        A. Plaintiffs cannot obtain an injunction halting the CFPB's pending enforcement action because they have an adequate remedy at law and will not suffer irreparable harm absent an injunction ....................................................................... 9

        B. Plaintiffs lack standing to seek an injunction halting the CFPB's completed investigation or hypothetical future CFPB regulatory action ..................................... 12

    III. The Court should decline to consider Plaintiffs' request for declaratory relief ................ 14

        A. Plaintiffs' requests for declaratory relief are contrary to the purposes of the Declaratory Judgment Act .......................................................................... 15

        B. The *Trejo* factors support dismissing Plaintiffs' requests for declaratory relief.......... 17

        C. The first-to-file rule does not support exercising jurisdiction over this anticipatory suit.................................................................................................... 20

    IV. Plaintiffs' claims are not ripe......................................................................... 21

CONCLUSION................................................................................................................... 26

## **INTRODUCTION**

Plaintiffs ask this Court to enjoin a federal agency from pursuing a now-pending civil law enforcement action against them in another United States District Court. The Court should decline this extraordinary invitation and dismiss Plaintiffs' Complaint because it seeks unavailable relief in the wrong court.

Plaintiffs are Utah companies Acima Digital, LLC (formerly known as Acima Credit, LLC) and its parent, Acima Holdings, LLC (collectively, "Acima"), along with their co-founder and former CEO, Utah resident Aaron Allred. They are also the defendants in a public enforcement proceeding brought by the Consumer Financial Protection Bureau ("CFPB") in the District of Utah (the "Utah Action"). There, the CFPB alleges that Acima and Allred violated multiple consumer financial protection statutes in connection with millions of consumer credit transactions that Acima treated as "lease-to-own" transactions to evade various consumer protection laws. Before filing suit, the CFPB sought to negotiate a voluntary settlement with Acima and Allred. After those negotiations stalled and counsel for the CFPB told Acima's counsel that the CFPB was preparing to bring suit if negotiations failed, Acima raced to the courthouse to file this improper suit.

This Court should dismiss this case for a host of reasons. First, venue is improper. Two Utah companies and an individual Utah resident filed this suit to block an enforcement action that a federal agency is prosecuting in Utah. Although Plaintiffs assert that a substantial part of the events or omissions giving rise to their claims occurred in this district, they do not allege a single such event or omission that occurred here. Plaintiffs cannot secure venue on that basis.

Second, the injunctions Plaintiffs seek are unavailable as a matter of law. They cannot obtain an injunction blocking the pending Utah Action because they have an adequate remedy at

1

law and will suffer no irreparable injury without it: They can raise every argument asserted here in the enforcement action pending against them. And they lack standing to seek injunctive relief barring the CFPB from conducting its now-concluded investigation or from taking some other hypothetical future action against them. That is because an injunction would not remedy the past harms Plaintiffs claim to have suffered from the past investigation, and Plaintiffs fail to identify any actual or imminent threat of the CFPB taking any future action against them apart from the pending enforcement action.

Third, this Court should decline Plaintiffs' invitation to issue a discretionary declaratory judgment. The Declaratory Judgment Act gives potential defendants an opportunity to clarify legal rights—it is not a vehicle for actual defendants to ask one court to rule on defenses that can and will be efficiently resolved in an enforcement action pending before a different court. Permitting this suit to go forward would accomplish little more than encouraging other potential enforcement defendants to rush into court whenever they perceive a tactical advantage in doing so.

Finally, Plaintiffs' claims are not ripe under Fifth Circuit precedent. That is both because dismissal will impose no hardship on Plaintiffs and because most of Plaintiffs' claims would benefit from the more concrete setting offered by the Utah Action. *Walmart v. Dep't of Just.*, 21 F.4th 300, 311–13 (5th Cir. 2021).

Accordingly, the Court should dismiss Plaintiffs' Amended Complaint.[1]

---

[1] Given the threshold issues requiring dismissal, the CFPB does not address the merits of Plaintiffs' claims here. But they are meritless, as the CFPB reserves the right to explain in an appropriate motion should the Court permit this case to proceed.

2

**STATEMENT OF ISSUES**

1. Whether a substantial part of the events or omissions giving rising to Plaintiffs' claims occurred in this district such that transactional venue lies under 28 U.S.C. § 1391(e)(1)(B), where Plaintiffs do not allege any relevant events or omissions that occurred here.

2. Whether Plaintiffs can obtain injunctive relief enjoining the CFPB from prosecuting an enforcement action pending against them before another federal district court, where Plaintiffs will have an opportunity to raise all the arguments they seek to make here.

3. Whether Plaintiffs currently have standing to seek injunctive relief to halt an already-completed investigation or to prevent a hypothetical future investigation, enforcement action, or other regulatory action where Plaintiffs allege no facts suggesting they face any actual or imminent threat of such future action.

4. Whether this Court should exercise its discretionary jurisdiction under the Declaratory Judgment Act to consider Plaintiffs' claims and grant declaratory relief when Plaintiffs may obtain resolution of every claim they raise here in the CFPB's pending enforcement action.

5. Whether Plaintiffs' preemptive challenge to the CFPB's actions is ripe where Plaintiffs would suffer no hardship from this Court declining to resolve their claims and most of their claims would benefit from the more concrete setting offered by the CFPB's pending enforcement action.

**BACKGROUND**

**The Parties**. "In the wake of the 2008 financial crisis, Congress established the Consumer Financial Protection Bureau (CFPB), an independent regulatory agency tasked with ensuring that consumer [financial] products are safe and transparent." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020). Among other tools, Congress granted the CFPB

3

authority to enforce the Consumer Financial Protection Act ("CFPA") and certain pre-existing federal consumer protection statutes, including the Electronic Fund Transfer Act ("EFTA"), Fair Credit Reporting Act ("FCRA"), and the Truth in Lending Act ("TILA"). 12 U.S.C. §§ 5481(12), (14), 5564(a).

Plaintiffs are Utah companies Acima Digital, LLC, and Acima Holdings, LLC, and their co-founder and former CEO, Utah resident Allred. Am. Compl. ¶¶ 34–35. They are also the defendants in a CFPB civil law enforcement action now pending in the District of Utah. *Id.* ¶¶ 57–59, 62, 75. The CFPB brought that case to address ongoing violations of law that Acima and Allred have committed in offering financing to consumers, primarily for the purchase of household goods. The CFPB's Complaint alleges that Acima—which went by "Acima Credit" during most of the relevant period—billed its product as leases or "virtual rent-to-own" transactions to evade consumer protection laws that apply to credit. Compl. ¶¶ 1–3, 13, 27, *CFPB v. Acima Holdings, LLC*, No. 2:24-cv-00525 (D. Utah July 26, 2024), ECF No. 1 ("CFPB Compl."). (Though, sometimes, they also called their products credit to dodge other laws. *Id.* ¶¶ 40–41, 263–269.) Among other things, Acima misleadingly indicated it was offering a "same as cash" 90-day loan, when that option in fact required paying a markup from the retail price, *id.* ¶¶ 4–5, 71–77; it tricked consumers into signing up by obscuring the agreement during the application process, *id.* ¶¶ 45–70; it trapped consumers in the costly arrangement by promising consumers they could terminate their obligations by returning the goods and then making it extremely difficult to do so, *id.* ¶¶ 78–92; and it reported inaccurate information about their customers to consumer reporting agencies, *id.* ¶¶ 127–32.

Some of Acima's business practices—including misrepresenting the nature of its product and failing to provide required disclosures—violated relevant statutory prohibitions because the

4

company was extending (or at least offering) credit. *Id.* ¶¶ 165–240. Other practices—such as conveying inaccurate information about consumers to consumer reporting agencies—violated statutory prohibitions whether or not its product qualifies as credit under the law. *Id.* ¶¶ 241–262. And some of Acima Credit's conduct—specifically, obtaining prescreened lists of consumers without a permissible purpose—violated the law only in the alternative case that its product was *not* credit. *Id.* ¶¶ 263–269.

**The Events Preceding This Litigation.** On October 1, 2020, the CFPB issued a Civil Investigative Demand ("CID") to Acima Credit and its holding company. Am. Compl. ¶ 57. The CID stated that the CFPB was investigating, among other things, whether Acima was offering or extending credit to consumers and, if so, whether Acima was doing so in a manner that violated federal consumer financial laws, including the CFPA and TILA. *Id.* ¶ 58. Other CIDs, including one to Allred personally, followed. *Id.* ¶¶ 59, 62. As that investigation continued, Acima Credit changed its name to Acima Digital in December 2021. CFPB Compl. ¶ 13 n.1.

In May 2024, the CFPB informed Plaintiffs that it intended to bring an enforcement action against them unless the parties could reach a negotiated settlement. Am. Compl. ¶ 64. The parties discussed the terms of a possible settlement for weeks thereafter. *Id.* ¶ 65–68. When negotiations began to stall, the CFPB informed Plaintiffs in July that, given the dwindling prospects for reaching agreement, it had begun preparing to file suit. *Id.* ¶¶ 69, 71. On July 22, Acima filed this action under the Declaratory Judgment Act. *See* Compl. ¶ 22. On July 26, the CFPB filed its enforcement action in the District of Utah. Am. Compl. ¶ 75.

On August 2, Acima, now joined by Allred, amended its complaint. *See* Am. Compl. Plaintiffs claim (1) that the CFPB "has no authority" to take action against Acima because Acima's transactions with consumers "are not 'credit'" within the meaning of the relevant

5

statutes; (2) that the CFPB's enforcement activity violates Acima's due process rights because Acima lacked "fair notice" that the CFPB would consider its transactions to be "credit"; and (3) that "the CFPB's funding mechanism is unconstitutional." *Id.* ¶¶ 86, 100, 105. As relief, Plaintiffs seek declarations "that the CFPB lacks legal authority" over them, that they "have not violated any provisions of the laws governing credit" over which the CFPB has authority, and that "the entirety of the [CFPB's] investigation violates the Constitution." *Id.* at 2 & ¶ 21. They also seek injunctions against the CFPB's "pending" investigation, the ongoing enforcement action, and any future investigation, enforcement proceeding, or other exercise of "investigative, supervisory, enforcement, rulemaking or other regulatory authority" over Plaintiffs. *Id.* ¶¶ 96, 104, 107.

On September 16, Plaintiffs moved to transfer the Utah Action to this Court, arguing (among other things) that transfer was warranted under the "first-to-file" rule because Plaintiffs beat the CFPB to the courthouse. Defs.' Mot. to Transfer or, in the Alternative, to Stay at 4–8, *CFPB v. Acima Holdings, LLC*, No. 2:24-cv-00525-DBB (D. Utah Sept. 16, 2024), ECF No. 11.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), this Court can dismiss a suit for lack of subject matter jurisdiction. Plaintiffs bear the burden to establish that jurisdiction is proper. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling, the Court may consider matters outside of the pleadings. *Cantu Silva v. United States*, 110 F.4th 782, 786 (5th Cir. 2024) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(3), this Court can dismiss a case if this district is an improper venue. Plaintiffs bear the burden to establish venue is proper. *Parks v. AIG*, No. 4:22-cv-991-SDJ, 2022 WL 17875810, at *1 (E.D. Tex. Dec. 22, 2022) (Jordan, J.). In

ruling, the Court may consider matters outside of the pleadings and hold an evidentiary hearing to resolve disputed facts. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). "Absent an evidentiary hearing on a Rule 12(b)(3) motion, affidavits and other evidence submitted by the non-moving party are viewed in the light most favorable to that party." *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Tex.*, No. H-17-2661, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) (citing *Ambraco*, 570 F.3d at 238 (citation omitted)).

Under Federal Rule of Civil Procedure 12(b)(6), this Court can dismiss a case for failure to state a legally cognizable claim for its requested relief. In ruling, the Court should accept the complaint's allegation as true, and construe them in Plaintiffs' favor. *Ramming*, 281 F.3d at 161. The Court can also consider documents incorporated into the complaint and matters of which it can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## <u>ARGUMENT</u>

## I.   <u>This Court should dismiss this case for improper venue.</u>

This preemptive suit would be improper anywhere it was filed, but it also fails at the threshold because Plaintiffs filed in an improper venue. Plaintiffs assert that venue is proper under 28 U.S.C. § 1391(e)(1)(B), which authorizes suit in a district where "a substantial part of the events or omissions giving rise to the claim occurred."[2] Am. Compl. ¶ 24 (citing 28 U.S.C. § 1391(e)(1)(B)). But Plaintiffs don't allege a single relevant event or omission occurred here. In determining where "the events or omissions giving rise to [a] claim occurred," this Court "looks to the defendant's conduct, and where that conduct took place." *Parks*, 2022 WL 17875810, at

---

[2] Plaintiffs also assert that "venue in this district is otherwise authorized under 28 U.S.C. § 1391 and principles of pendent venue." Because it is unclear what Plaintiffs mean by this vague and conclusory assertion, the CFPB does not address it.

*4 (construing identical language in 28 U.S.C. § 1391(b)(2) (citation omitted)). Here, Plaintiffs do not allege that the CFPB engaged in any conduct in this district at all. Quite the opposite, what Plaintiffs allege is that the CFPB, an agency based in Washington, D.C., investigated and attempted to negotiate a settlement with two Utah corporations and then filed an enforcement action against them and their Utah resident co-founder and former CEO in Utah. Am. Compl. ¶¶ 34–35, 75. None of those events or omissions occurred in this district—let alone a "substantial part" of them.

And if the events and omissions giving rise to Plaintiffs' claims include Plaintiffs' own actions that Plaintiffs ask this Court to declare lawful, Plaintiffs still have not established venue here. Plaintiffs emphasize that various Acima officers and managers "are" based in this district and that "major corporate decisions" about Acima "are" made here, Am. Compl. ¶¶ 26–28—but they do not allege that those officers and managers were based here, or made relevant decisions here, during the relevant time period: the eleven years leading up to the filing of the CFPB's complaint when the CFPB claims Acima was violating the law. To the contrary, Plaintiffs' only allegation that touches on the past location of any Acima personnel is its assertion that Utah resident Allred co-founded the company in 2013, was its CEO "through August 2020," and "worked for Acima for a time" thereafter. Am. Compl. ¶ 35.[3]

---

[3] Plaintiffs also assert their corporate parent's principal place of business is in this district, Am. Compl. ¶ 34, but do not allege that *their* principal place of business is here or that they could establish venue in this district under 28 U.S.C. § 1391(e)(1)(C) on the ground that Plaintiffs "reside" here. *See id.* § 1391(e)(1)(C) (laying venue where "the plaintiff resides"); *id.* § 1391(c)(2) (establishing that, for venue purposes, a plaintiff corporation "resides" in the district where "it maintains its principal place of business").

Because venue is improper, the Court should dismiss this case. A court handling "a case laying venue in the wrong division or district" may "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Dismissal is warranted where, as here, the parties to a case are already "participating in a lawsuit regarding the same subject matter" in a different district. *Roberts v. Millennium Health, LLC*, No. 4:19-cv-758-SDJ, 2019 WL 13216542, at *3 (E.D. Tex. Dec. 12, 2019) (Jordan, J.). Alternatively, the Court could transfer this case to the District of Utah, where it can be handled by the same judge who is considering the CFPB's enforcement action that Plaintiffs seek to enjoin.

## II.   Plaintiffs cannot obtain injunctive relief.

Even if venue were proper, the Court should still dismiss this case because Plaintiffs cannot obtain the injunctive relief they seek. Plaintiffs cannot obtain an injunction against the CFPB's ongoing enforcement action because they have an adequate remedy at law—they can litigate each of their claims in the pending enforcement action—and face no irreparable harm if that enforcement action is not enjoined. And they cannot obtain an injunction against the CFPB's already-completed investigation or hypothetical future CFPB actions of any sort because they lack (or at best have lost) standing to seek those remedies.

### A.   Plaintiffs cannot obtain an injunction halting the CFPB's pending enforcement action because they have an adequate remedy at law and will not suffer irreparable harm absent an injunction.

Plaintiffs cannot obtain an injunction that would bar the CFPB from prosecuting the pending enforcement action in the District of Utah. An "injunction is a drastic and extraordinary remedy." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). And it is a "basic doctrine of equity jurisprudence" that no injunction may issue "when the moving party

9

has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (cleaned up); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (explaining that "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief," including by establishing "irreparable injury" and that "remedies available at law . . . are inadequate"). That is the case here.

Plaintiffs have an adequate remedy at law for their claimed injury from being subjected to what they consider an unlawful and unconstitutional enforcement action: They can move to dismiss the CFPB's lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6). As the Eleventh Circuit explained, "if a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005); *see also* Charles A. Wright et al., 11A Fed. Prac. & Proc. Civ. § 2944 (stating that if a "plaintiff can assert the claim as a defense in some other proceeding," then the "alternative remedy is adequate"). In other words, party "A cannot file suit against B asking that B be enjoined from bringing his suit on the ground that A has a good defense to it." *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003) (dismissing preemptive lawsuit seeking to enjoin federal enforcement action filed after preemptive suit). That is because "A has an adequate remedy at law"—to raise his defense "in the case brought by B." *Id.* So too here, if Plaintiffs believe that the CFPB's enforcement action is unlawful—because the CFPB is exceeding its statutory authority or because Plaintiffs did not have fair notice that its conduct was illegal or because of some infirmity with the CFPB's funding—then they are free to make those arguments as a

defense in the enforcement action. The chance to raise their challenges there is an adequate remedy at law that precludes them from obtaining an injunction here.

Plaintiffs also will not face any irreparable injury if the pending enforcement action isn't enjoined. Plaintiffs claim harm from having to expend resources defending the CFPB's allegedly unlawful enforcement action, *see* Am. Compl. at 22, but that is insufficient for two reasons. First, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also Gravity Defyer Med. Tech. Corp. v. FTC*, No. CV 22-1157 (RDM), 2023 WL 2571758, at *4 (D.D.C. Mar. 20, 2023) (finding no irreparable harm in denying request to enjoin separate, pending enforcement action because "the cost and delay associated with modern-day litigation simply does not establish irreparable harm"). Second, an injunction would not prevent litigation costs even if they were relevant. Plaintiffs will incur litigation expenses as a result of either defending the CFPB's enforcement action or continuing the instant lawsuit. And there is no reason to think that this lawsuit will proceed any more expeditiously than the pending enforcement action. Quite the opposite: If Plaintiffs' challenges had merit, Plaintiffs could obtain resolution more expeditiously and cost-effectively in the enforcement action by raising them in a motion to dismiss—an option not available to them here given this lawsuit's "awkward cart before the horse litigation posture," *see Kochava v. FTC*, No. 2:22-cv-00349, 2023 WL 3250496 (D. Idaho May 3, 2023) (dismissing preemptive suit seeking to enjoin enforcement action).

That Plaintiffs cannot obtain an injunction against the Utah Action is reinforced by principles of comity. In particular, "[w]hen an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *See*

11

*Commodity Futures Trading Com. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (quoting *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976)). This is not a "most unusual case[]" that would warrant interfering with another federal court; it's a preemptive strike against a run-of-the-mill enforcement action. The CFPB avers, in the main, that Plaintiffs offer and provide a consumer financial product—credit—and in offering and providing that product have violated federal consumer financial law. *See generally* CFPB Compl. Plaintiffs disagree and will likely argue in the enforcement action that the case should be dismissed for the various reasons they raise here. There is nothing unusual about that. If anything, what makes this case unusual is Plaintiffs' attempt to short-circuit the normal process by filing a separate injunctive lawsuit attacking the Utah Action. This Court should dismiss Plaintiffs' preemptive attack on the CFPB's law enforcement action. *See*, *e.g.*, *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 696 (D.C. Cir. 2015) (affirming dismissal of preemptive injunctive suit seeking to enjoin CFPB enforcement action); *Buntrock*, 347 F.3d at 997 (same for SEC enforcement action); *Gravity Defyer Med. Tech. Corp.*, 2023 WL 2571758, at *4 (dismissing preemptive injunctive suit seeking to enjoin FTC enforcement action).

**B. Plaintiffs lack standing to seek an injunction halting the CFPB's completed investigation or hypothetical future CFPB regulatory action.**

Plaintiffs also lack standing to seek the additional injunctive relief they demand here—barring both the "pending" (actually, completed) investigation and any future investigation, enforcement proceeding, or other regulatory action, Am. Compl. ¶¶ 96, 104, 107. A plaintiff must separately establish standing for each remedy it seeks. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.").

To establish Article III standing, a plaintiff must show that it faces actual or imminent injury that is caused by the challenged conduct and redressable by a favorable decision. *Kovac v. Wray*, 109 F.4th 331, 340 (5th Cir. 2024). Further, the injury that supports standing when a case is filed "must continue throughout its existence." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citation omitted). Plaintiffs' claims for an injunction barring the CFPB's previous investigation and barring future action against them fail this Article III test.

While Acima (but not Allred, who did not join the case until later) may have had standing at the outset of this case to seek an injunction against the CFPB's then-pending investigation, they no longer have standing because that investigation concluded when the CFPB filed its enforcement action, *see* 12 U.S.C. § 5562(c)(1) (authorizing the CFPB to issue civil investigative demands only "before the institution" of an enforcement action). Plaintiffs point to no ongoing injury from the concluded investigation. Instead, Plaintiffs claim only that they have "*incurred* millions of dollars in legal fees defending against the CFPB's . . . investigation, *produced* millions of pages of documents to the government, and *expended* an enormous amount of time and resources defending against an investigation." *Id.* ¶ 81 (emphasis added). None of these asserted past injuries could be redressed by an injunction. *Cf. James v. Hegar*, 86 F.4th 1076, 1082 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1461 (2024) ("But if Plaintiffs allege no impending future injury, this prospective relief in no way redresses Plaintiffs' alleged injuries."). The request for that relief is therefore moot. *See Arizonans for Off. English*, 520 U.S. at 68 n.22; *see also Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2022 WL 3701720, at *2 (N.D. Tex. Aug. 8, 2022) ("A case becomes moot when a party loses standing."). "Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod.*

*Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (citation omitted). Under that doctrine, a plaintiff cannot

seek "to enjoin an investigation that has now concluded" because "the Court cannot enjoin what

no longer exists." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392–23 (2d Cir. 2022) (dismissing

request for injunction against state attorney general's investigation as moot).

Plaintiffs have also from the outset lacked standing to seek an injunction barring

hypothetical future investigations, enforcement proceedings, or other regulatory action. A

plaintiff must establish injury that is "actual or imminent, not conjectural or hypothetical" to

establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). For future injury to support

standing, it "must be *certainly impending*." *Kovac*, 109 F.4th at 340 (citation omitted, emphasis

in original). But here, Plaintiffs allege nothing to suggest that the CFPB is "imminent[ly]" going

to take any regulatory action with respect to them apart from the pending Utah Action, let alone

that any such action is "certainly impending." Plaintiffs therefore lack standing to seek an

injunction barring hypothetical, not imminent, future actions.

III.    **The Court should decline to consider Plaintiffs' request for declaratory relief.**

The Court should also dismiss Plaintiffs' requests for declaratory relief because this is not

an appropriate case for that remedy. The Declaratory Judgment Act provides that "[i]n a case of

actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.

§ 2201(a). By the Act's own terms, a court's power under the Act is discretionary. *See*

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (stating that the use of the

permissive "may" in the Declaratory Judgment Act "has long been understood 'to confer on

federal courts unique and substantial discretion in deciding whether to declare the rights of

litigants"). This court should decline to exercise that discretion here because Plaintiffs are not

seeking legal clarity in the face of uncertain litigation, but rather to inappropriately litigate their defenses to the CFPB's enforcement action pending elsewhere. Entertaining their request for declaratory relief would therefore be both inconsistent with the purposes of the Declaratory Judgment Act and unwarranted under the *Trejo* factors that the Fifth Circuit directs district courts to consider in deciding "whether to entertain" a declaratory judgment action, *see St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).

### A. Plaintiffs' requests for declaratory relief are contrary to the purposes of the Declaratory Judgment Act.

The "proper purpose" of the Declaratory Judgment Act is to "allow potential defendants to resolve a dispute without waiting to be sued." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 397 (5th Cir. 2003). It is "intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued." Charles A. Wright et al., 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed.). Here, Plaintiffs are not "potential defendants" seeking resolution without having to "wait[] to be sued." They have been sued, and that lawsuit—the CFPB's enforcement action in Utah—will afford Plaintiffs the chance to resolve their dispute by raising all their challenges as defenses. For this reason, Plaintiffs' declaratory judgment will serve "no useful purpose." *See Odeco, Inc. v. Bridgett*, 22 F.3d 1093, 1093, 1994 WL 198875 (5th Cir. 1994) (unpublished) (affirming dismissal of declaratory judgment action where action "would serve no useful purpose beyond mere duplication of effort" given that issue on which plaintiff sought declaration "can be resolved" in other pending action).

Indeed, courts have consistently concluded that the "anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure." *Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) ("[N]umerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense."); *cf. Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 6255733, at *6 (E.D. Tex. Nov. 22, 2019) (noting that "courts in the Fifth Circuit have regularly rejected declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit" and collecting cases).

In addition to serving no useful purpose, a declaratory judgment action in circumstances like this "deprives the [natural] plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *Hanes*, 531 F.2d at 585. But the "federal declaratory judgment is not a prize to the winner of" such a "race to the courthouse." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987). This is why "[a]nticipatory suits are disfavored" in the Fifth Circuit. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983). Yet, exercising jurisdiction over this preemptive suit would encourage natural defendants to file more suits in the face of expected litigation against them. After all, every defense to an enforcement suit could be recast as a request for declaratory judgment on that defense. But especially where the natural plaintiff has filed its action, as is the case here, there is no need to consider a request for declaratory relief. *Cf. U.S. Bank Nat'l Ass'n as trustee for CSMC Mortg.-Backed Tr. 2007-3 v. Lamell*, No. 21-20326, 2022 WL 1800860, at *5 (5th Cir. June 2, 2022) (expressing concern where "clever litigants [would] anticipate suit, bring a future defense as a declaratory judgment 'claim,' and thereby preclude the

16

would-be plaintiff from being able to bring her claim for coercive relief" due to claim

preclusion).

**B. The *Trejo* factors support dismissing Plaintiffs' requests for declaratory relief.**

The Court should also dismiss Plaintiffs' requests for declaratory relief under the Fifth

Circuit's factors enunciated in *Trejo*. In that case, the court of appeals listed seven non-

exhaustive factors that district courts should consider when determining whether to exercise

jurisdiction under the Declaratory Judgment Act.[4] Those factors address three overarching

concerns: (1) the proper allocation of decision-making between state and federal courts, (2)

efficiency, and (3) fairness. *Sherwin-Williams Co.*, 343 F.3d at 390–91. While the first concern is

not implicated here, the latter two strongly favor dismissal.

*Efficiency (factors 1, 5, and 6).* The efficiency factors favor dismissal because there is

another pending action "in which all of the matters in controversy may be fully litigated," *Trejo*,

39 F.3d at 590. Plaintiffs can raise each issue in this action as a defense to the CFPB's

enforcement action in the District of Utah, and it would serve judicial economy for that court to

adjudicate the issues Plaintiffs raise here along with the other issues in that case.

Dismissing this action would also honor the Fifth Circuit's instruction that a "federal

district court should avoid duplicative or piecemeal litigation where possible." *Sherwin-Williams*

---

[4] The seven factors are "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Sherwin-Williams Co.*, 343 F.3d at 388.

*Co.*, 343 F.3d at 391. Entertaining this action would almost certainly create piecemeal litigation because it would not resolve all of the claims in the Utah action. If Plaintiffs successfully argued that their lease-to-own agreements are not credit, then the CFPB's enforcement action would still proceed at the very least on the Bureau's FCRA claims, which apply even if no "credit" is involved. *See* CFPB Compl. Counts XIV–XVIII, ¶¶ 241–269; *see also* Am. Compl. at 20 n.3 (stating that the instant complaint "does not address" the CFPB's FCRA claims "specifically"). If Plaintiffs successfully argued they did not have fair notice of the CFPB's position until 2023, then that would resolve only whether the CFPB could obtain retrospective relief for their conduct before that point. *See* Am. Compl. ¶ 102 (conceding Plaintiffs had notice as of 2023). The enforcement action would still proceed with respect to Acima's conduct after that. If Plaintiffs successfully argued that the CFPB could not act because its funding is currently invalid, even Plaintiffs would have to concede that the enforcement action could resume as soon as the funding "problem" was fixed. And if this Court rejects Plaintiffs' claims, then the separate enforcement action still proceeds to determine Plaintiffs' liability. All of this, of course, can be avoided by just allowing the District of Utah to proceed with the entire case pending there. *See Sally Holdings LLC v. Bd. Ams., Inc.*, No. 4:22-cv-285-SDJ, 2023 WL 4424599, at *6 (E.D. Tex. July 10, 2023) (Jordan, J.) (dismissing declaratory judgment action where retaining jurisdiction "would frustrate judicial economy by necessitating two suits").[5]

---

[5] The efficiency factors also assess which forum is "convenient" for the "parties and witnesses." *Sherwin-Williams Co.*, 343 F.3d at 388. As discussed above, Utah—where the CFPB filed its enforcement action—is where the Acima Plaintiffs are headquartered and where Plaintiff Allred resides. While Plaintiffs identify some employees located in this district, it is not clear how many (if any) of those employees would be witnesses or how many other witnesses are located elsewhere, including in Utah. But however this factor weighs in the balance, the *Trejo* factors as a whole favor dismissing this suit.

*Fairness (factors 2, 3, and 4)*. The *Trejo* fairness factors assess whether the declaratory plaintiff seeks to "us[e] the declaratory judgment process to gain access to" a forum of its choice "on improper or unfair grounds." *Sherwin-Williams Co.*, 343 F.3d at 391. That is the case here.

To start, "[c]ourts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *AmSouth Bank v. Dale*, 386 F.3d 763, 787–88 (6th Cir. 2004); *see also Sally Holdings LLC*, 2023 WL 4424599, at *6 ("Indeed, courts in the Fifth Circuit favor dismissing or transferring declaratory-judgment actions that deprive the true plaintiff of filing their affirmative case in a forum of its choosing."); *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) ("The Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum."). Moreover, "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995); *see also Capco Int'l, Inc. v. Haas Outdoors, Inc.*, No. 3:03-CV-2127G, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004) (finding improper forum shopping where the declaratory plaintiffs' proposed declarations were "phrased as inverted elements" of the natural plaintiff's claims). Such cases evince a "race to res judicata" that would "cause inequities" if the declaratory action were to proceed. *Federated Rural Elec. Ins. Exch. v. Jourdan*, No. CV 16-14187, 2017 WL 1399608, at *3 (E.D. La. Apr. 19, 2017) (finding declaratory plaintiff's "race to res judicata" favored dismissal).

19

Whatever their exact reasons, it is clear that Plaintiffs filed in anticipation of the CFPB's enforcement action and did so to litigate their defenses to that enforcement action in a forum of their choosing. In other words, Plaintiffs filed this action in an apparent "race to res judicata." *See id*. Plaintiffs freely admit that they filed this lawsuit because "the CFPB's threatened lawsuit against Acima and Allred was clearly imminent and anticipated." Am. Compl. ¶ 73. Plaintiffs did not file in Utah, where Acima is headquartered, where Plaintiff Allred resides, and where the CFPB ultimately filed its enforcement action. Rather, they filed in Plano, Texas, which has, at best, a limited connection to the issues in this litigation and the CFPB's enforcement action. Thus, this filing of "a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit," serves "no real value . . . except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth Bank*, 386 F.3d at 788 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)).

For these reasons, the *Trejo* factors strongly weigh against the court exercising its discretion to consider Plaintiffs' request for declaratory relief.

**C. The first-to-file rule does not support exercising jurisdiction over this anticipatory suit.**

That Plaintiffs beat the CFPB to the courthouse door by four days does not alter the conclusion that the Court should dismiss Plaintiffs' Complaint. *Contra* Utah ECF No. 11[6] at 4–8 (Acima's motion arguing this case should proceed under the "first-to-file" rule). While the general rule is that "the district court who gets the suit first should be the one to decide the case,"

---

[6] "Utah ECF No." refers to docket numbers in the Utah Action.

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (citation omitted), that rule does not apply to anticipatory suits like this one, *Sally Holdings LLC*, 2023 WL 4424599, at *2 (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 779 n.15 (5th Cir. 1993)). "[A] first-filed declaratory action should be dismissed or stayed in favor of an affirmative suit when . . . it appears that the first-filed declaratory judgment action was brought in anticipation of the affirmative plaintiff's forthcoming suit." *Id.*; *see also Pontchartrain Partners*, 48 F.4th at 606 (holding that finding a suit was anticipatory supports "obviat[ing] the 'first-to-file' rule's application"); *AmSouth Bank*, 386 F.3d at 791 n.8. ("[C]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit.").

That is precisely what happened here: The CFPB informed Plaintiffs during negotiations that, if it did not receive a counteroffer, it was preparing to "fil[e] a substantive suit against [them]," and Acima "therefore race[d] to its preferred courthouse to be the first to file." *See Sally Holdings LLC*, 2023 WL 4424599, at *2. "The Fifth Circuit has instructed that such a 'race to the courthouse' is an improper use of the Declaratory Judgment Act." *Id.* (citing *Pontchartrain Partners*, 48 F.4th at 606); *see also Tempco Elec. Heater Corp.*, 819 F.2d at 750 (stating that "federal declaratory judgment is not a prize to the winner of the race to the courthouse"). Accordingly, the first-to-file rule provides no reason to exercise jurisdiction over this anticipatory suit.

## IV.   **Plaintiffs' claims are not ripe.**

This Court should also dismiss Plaintiffs' claims as unripe. The ripeness requirement aims "to prevent the courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). To determine whether a case is ripe, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Walmart Inc.*, 21 F.4th at 311 (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). A declaratory plaintiff must establish both hardship and fitness. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008); *accord Choice Inc.*, 691 F.3d at 715 (declaratory "plaintiff must show some hardship to establish ripeness"). This case satisfies neither of those requirements.

1. Plaintiffs will not suffer any hardship from the court withholding consideration of Plaintiffs' claims because they can obtain judicial resolution of all the issues they raise here in the Utah Action. The Fifth Circuit's decision in *Walmart* is instructive. There, Walmart, fearing a potential federal enforcement action, sued the Department of Justice in the Eastern District of Texas for declaratory relief, asking the district court to make several declarations regarding pharmacists' legal obligations under a federal law. 21 F.4th at 306. Walmart claimed that these declarations were contrary to positions DOJ would take in a future enforcement action. *Id*. Not long after, DOJ brought a civil enforcement action against Walmart in the District of Delaware, alleging "overlapping" claims to those Walmart had anticipated. *Id*. at 306–07. The Fifth Circuit concluded that Walmart's claims were not ripe. *Id.* at 311. On the hardship prong, the Fifth Circuit held that the "existence of Delaware litigation eliminates, or at least greatly reduced, the hardship that will be placed on Walmart by withholding consideration of this suit." *Id*. at 312. That was because Walmart had "the ability to test the government's regulatory position in court by raising its theories as defenses in the Delaware action." *Id*. at 313. And to the extent Walmart sought the declarations to protect against another prosecution in the future, Walmart faced no

22

hardship because the existence of the pending enforcement action "suggest[ed] that *future* enforcement is unlikely." *Id.* at 313 (emphasis in original).

That same reasoning applies here. Plaintiffs can obtain judicial resolution of all the issues on which they seek declarations by raising them as defenses in the Utah Action. Plaintiffs might "fear that the [Utah] litigation will proceed more slowly than this one would or that the court in that jurisdiction may be less sympathetic to its position," but the Fifth Circuit made clear that those are not the sorts of "adverse effects" that satisfy the "hardship" prong. *Id.* at 313. Because, like Walmart, Plaintiffs here face "no substantial hardship" if this court withholds consideration, their action is not ripe. *Id.*; *see also Choice Inc.*, 691 F.3d at 715 (concluding case was not ripe without addressing fitness prong where declaratory plaintiff "has not satisfied the hardship prong of the ripeness inquiry").

2. While all of Plaintiffs claims fail to satisfy the hardship requirement for ripeness, Plaintiffs' statutory authority and fair-notice claims are also unripe for the additional reason that they are not fit for judicial decision. To determine fitness for judicial decision, courts assess "whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Walmart*, 21 F. 4th at 312.

Plaintiffs' statutory and fair-notice claims—essentially, claims that their product is not "credit" or offered as "credit" within the meaning of various statutes and that Plaintiffs lacked fair notice of the CFPB's contrary view—are grossly unfit for judicial resolution in this posture. Both claims are highly fact-dependent: Whether the products are credit or offered as credit are questions of fact that turn on the specifics of Plaintiffs' agreements, how they functioned in practice, and how they were marketed to consumers. *Cf. Clark v. Rent-It Corp.*, 685 F.2d 245

23

(8th Cir. 1982) (holding that "totality of the circumstances surrounding [the] transaction" was relevant to whether transaction was "credit sale" under TILA); *Ollie v. Waypoint Homes, Inc.*, No. 14–cv–01996, 2014 WL 5474606, at *1 (N.D. Cal. Oct. 28, 2014) (whether conduct "involved a 'credit transaction'" implicated "question of fact"). Similarly fact-dependent is Plaintiffs' claim that they lacked "fair notice" that the CFPB would assert "that Acima's lease-to-own transactions are 'credit'" under various statutes. Am. Compl. ¶ 104. That claim, too, cannot be resolved in a vacuum; it turns on the facts about those particular transactions. And a claim "is not ripe if further factual development is required." *Choice Inc.*, 691 F.3d at 715. Of course, no factual development would be required for this Court to take the facts alleged in the CFPB's Utah complaint as true and decide whether, on those facts, Acima's products are or were offered as credit. But that would assess whether the CFPB's Utah complaint states a valid claim—and that's a question assigned to the Utah court before which that complaint is pending.

Moreover, Plaintiffs' claim that their "lease-to-own" agreements are not credit or offered as such would benefit from "a more concrete setting." *Walmart*, 21 F. 4th at 312. Again, *Walmart* is instructive. There, the Fifth Circuit held that a declaratory plaintiff's claims were not fit for resolution where "there [we]re differences" between the government's positions in its enforcement action and the positions Walmart challenged in its declaratory suit. *Id*. Because Walmart challenged "positions that the government d[id] not quite take," it had "fail[ed] to establish the 'actual case or controversy' that is needed for a declaratory judgment to be fit for judicial decision." *Id.*

Plaintiffs' claims have the same problem. In this case, Plaintiffs allege their version of the facts in contending that the CFPB lacks statutory authority to bring claims against them because they do not offer or provide "credit" within the meaning of the relevant statutes. But those

allegations differ from the facts that the CFPB alleges to establish that Acima offered or provided "credit." Acima's complaint nowhere mentions various facts relevant to the CFPB's claim that Acima's transactions are (and historically have been) credit, including that consumers acquired ownership of the goods at the end of the term without having to pay extra, that Acima did not repossess financed goods, that consumers generally bear the entire risk of loss or damage of the goods and the entire responsibility for repairs, and that Acima made it very difficult for consumers to terminate their agreements. CFPB Compl. ¶¶ 30, 32, 34, 96, 78–96. Nor does Plaintiffs' complaint mention the CFPB's allegations that Acima called itself "Acima Credit," referred to its product internally as credit, told consumers they were making a "firm offer of credit," and portrayed its financing materials as credit in its marketing materials. CFPB Compl. ¶¶ 20, 37, 38, 40. The basis on which the CFPB alleges that Acima offered and provided credit is thus "materially different" from what Plaintiffs' complaint challenges. *See Walmart*, 21 F.4th at 312. As in *Walmart*, these "discrepancies illustrate the peril of treating [Plaintiffs'] requested declarations as constituting a ripe case." *Id.*

Plaintiffs' claims are also unfit for the additional reason that they do not challenge any agency action that is "sufficiently final." *See Walmart*, 21 F.4th at 311. In the context of a challenge to agency action, whether "the issues are based on a final agency action" matters. *Texas Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 411 n.11 (5th Cir. 1999); *see also* Order at 6–7, *Consensys Software, Inc. v. SEC*, No. 4:24-cv-00369-O (N.D. Tex. Sept. 19, 2024) (ECF No. 57) ("*Consensys* Order"). The closest Plaintiffs come is pointing to the CFPB's filing of its enforcement action. Am. Compl. ¶ 75. But Fifth Circuit precedent is clear that an enforcement action is not final agency action. *Dow Chem. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987). Indeed, the Northern District of Texas recently dismissed a declaratory action asserting strikingly similar

statutory and fair-notice claims against the SEC for just that reason. *Consensys* Order at 7 (holding that "the enforcement actions do not constitute final agency actions" and therefore "do not render" statutory and fair-notice claims challenging them "fit for judicial decision"). Plaintiffs' statutory and fair-notice claims are not "fit for judicial decision" for that reason as well. *Id.*

      For these reasons, Plaintiffs' action should also be dismissed as not ripe.

## <u>CONCLUSION</u>

      For the reasons stated above, the Court should dismiss this case.

DATED:  September 23, 2024               Respectfully Submitted,

                                       SETH FROTMAN
                                       General Counsel

                                       STEVEN Y. BRESSLER
                                       Deputy General Counsel

                                       KRISTIN BATEMAN
                                     Assistant General Counsel

                                 *s/ Derick Sohn*
                                     DERICK SOHN
                                   JOSEPH FRISONE
                                 Senior Counsels
                               Consumer Financial Protection Bureau
                               1700 G St. NW
                               Washington, D.C. 20552
                               Derick.Sohn@cfpb.gov
                               Joseph.Frisone@cfpb.gov
                               (202) 435-7873 (Sohn)
                               (202) 435-9287 (Frisone)