**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **ACIMA DIGITAL, LLC, ACIMA HOLDINGS, LLC,** and **AARON ALLRED**, <br><br> *Plaintiffs*, <br><br>     *v.* <br><br> **CONSUMER FINANCIAL PROTECTION BUREAU** and **ROHIT CHOPRA**, in his official capacity as Director of the CFPB, <br><br> *Defendants*. | Civil Action No. 4:24-cv-00662 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STATEMENT OF ISSUES ..................................................................................................... 3

BACKGROUND ..................................................................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 6

ARGUMENT ........................................................................................................................... 6

    I.    Venue Is Proper in this District ...................................................................................... 6

    II.    Plaintiffs Are Entitled to Injunctive Relief. ................................................................... 8

        A.    Plaintiffs Meet the Requirements for an Injunction ..................................................... 12

        B.    Plaintiffs Have Standing To Seek Injunctive Relief. ................................................... 13

    III.    This Court Has Jurisdiction over Plaintiffs' Declaratory Judgment Relief Request ....... 13

        A.    Plaintiffs' Request for Declaratory Relief Is Consonant with the Declaratory Judgment Act… ........................................................................................................................... 14

        B.    The *Trejo* Factors Support Plaintiffs' Request for Declaratory Relief. ....................... 15

        C.    This Court Should Maintain Jurisdiction Under the First-to-File Rule. ...................... 19

    IV.    Plaintiffs' Claims Are Ripe .......................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*909 Corp. v. Vill. of Bolingbrook Police Pension Fund*,
   741 F. Supp. 1290 (S.D. Tex. 1990) ......................................................................21

*Abraham v. Alpha Chi Omega*,
   708 F.3d 614 (5th Cir. 2013) ...................................................................................8

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) .................................................................................21

*Apache Corp. v. N.Y.C. Employees' Ret. Sys.*,
   2008 WL 1775221 (S.D. Tex. Apr. 15, 2008) .......................................................20

*Babbitt v. United Farm Workers Nat. Union*,
   442 U.S. 289 (1979)...............................................................................................12

*Bowman v. RJM Ctr., LLC*,
   2015 WL 4722110 (E.D. Tex. Aug. 7, 2015) ........................................................24

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
   70 F.4th 914 (5th Cir. 2023) .....................................................................14, 22, 25

*Brister v. Faulkner*,
   214 F.3d 675 (5th Cir. 2000) .................................................................................14

*Buntrock v. SEC*,
   347 F.3d 995 (7th Cir. 2003) ..............................................................................9, 10

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) .................................................................................20

*Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC*,
   2006 WL 1984627 (S.D. Tex. July 14, 2006).......................................................20

*Certain Underwriters at Lloyd's London v. A & D Ints., Inc.*,
   197 F. Supp. 2d 741 (S.D. Tex. 2002) ................................................................6, 23

*CFPB v. Acima Holdings*,
   No. 2:24-cv-00525-DBB-CMR (D. Utah July 26, 2024) ...................................5, 23

*CFPB v. Community Financial Services Association of America, Ltd.*,
   601 U.S. 416 (2024)..................................................................................................5

*Cherokee Nation v. Nash*,
724 F. Supp. 2d 1159 (N.D. Okla. 2010) ..............................................................11

*Consumer Data Indus. Ass'n v. Tex. through Paxton*,
564 F. Supp. 3d 506 (W.D. Tex. 2021)..................................................................23

*Consumer Data Indus. Ass'n v. Tex. through Paxton*,
2023 WL 4744918 (5th Cir. July 25, 2023) ..........................................................23

*Consumer Fin. Prot. Bureau v. Snap Fin. LLC*,
2024 WL 3625007 (D. Utah Aug. 1, 2024) ...............................................9, 24, 25

*Doe v. Univ. of Tex. Health Sci. Ctr. at Hous.*,
2021 WL 5882625 (S.D. Tex. Dec. 13, 2021)........................................................24

*Domain Prot., LLC v. Sea Wasp, LLC*,
2019 WL 6255733 (E.D. Tex. Nov. 22, 2019) ......................................................15

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
948 F.3d 289 (5th Cir. 2020) .................................................................................19

*Emerald City Mgmt., L.L.C. v. Kahn*,
624 F. App'x 223 (5th Cir. 2015) ..........................................................................10

*Federated Rural Elec. Ins. Exch. v. Jourdan*,
2017 WL 1399608 (E.D. La. Apr. 19, 2017)..........................................................21

*French v. Boner*,
940 F.2d 659 (6th Cir. 1991) .................................................................................25

*Georgouses v. NaTec Res., Inc.*,
963 F. Supp. 728 (N.D. Ill. 1997) ............................................................................7

*Great Am. Ins. Co. v. ACE Am. Ins. Co.*,
2018 WL 1916567 (N.D. Tex. Apr. 20, 2018) ......................................................19

*Gregson v. Zurich Am. Ins. Co.*,
322 F.3d 883 (5th Cir. 2003) ...................................................................................6

*Hanes Corp. v. Millard*,
531 F.2d 585 (D.C. Cir. 1976) ...............................................................................15

*Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*,
331 F. Supp. 3d 581 (E.D. La. 2018).....................................................................10

*Hollis v. Itawamba Cnty. Loans*,
657 F.2d 746 (5th Cir. 1981) .................................................................................13

iv

*Hospah Coal Co. v. Chaco Energy Co.*,
  673 F.2d 1161 (10th Cir. 1982) .................................................................11

*Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affs.*,
  2008 WL 5191935 (N.D. Tex. Dec. 11, 2008) .........................................12

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*,
  624 Fed. App'x 159 (5th Cir. 2015) .........................................................22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................12

*Luxottica of Am., Inc. v. Brave Optical, Inc.*,
  2022 WL 20334591 (E.D. Tex. Nov. 29, 2022) .................................23, 24

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403 (5th Cir. 1971) ....................................................................20

*Mass. Bay Ins Co. v. Usie*,
  2018 WL 1834368 (W.D. La. Mar. 26, 2018) ..........................................17

*Mass. Bay Ins. Co. v. Usie*,
  2018 WL 1833312 (W.D. La. Apr. 17, 2018) ...........................................17

*McAllister v. F.D.I.C.*,
  87 F.3d 762 (5th Cir. 1996) ........................................................................6

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
  785 F.3d 684 (D.C. Cir. 2015) ..................................................................10

*Morris v. Dearborne*,
  69 F. Supp. 2d 868 (E.D. Tex. 1999) ........................................................14

*Mosley v. Liberty Mut. Fire Ins. Co.*,
  2019 WL 2494586 (E.D. Tex. May 22, 2019) ..........................................22

*Odeco, Inc. v. Bridgett*,
  1993 WL 165687 (E.D. La. May 7, 1993) .................................................15

*Odeco, Inc. v. Bridgett*,
  22 F.3d 1093 (5th Cir. 1994) ....................................................................15

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998) ..................................................................................23

*Parks v. AIG*,
  2022 WL 17875810 (E.D. Tex. Dec. 22, 2022) .....................................7, 8

*Phi Theta Kappa Honor Soc'y v. HonorSociety.Org, Inc.*,
 2024 WL 1335091 (S.D. Miss. Mar. 28, 2024) ...................................................................10

*Riddle & Assocs., P.C. v. Kelly*,
 414 F.3d 832 (7th Cir. 2005) ...............................................................................................10

*Roark & Hardee LP v. City of Austin*,
 522 F.3d 533 (5th Cir. 2008) ...............................................................................................22

*Roberts v. Millennium Health, LLC*,
 2019 WL 13216542 (E.D. Tex. Dec. 12, 2019)..................................................................7, 8

*Rowan Cos., Inc. v. Griffin*,
 876 F.2d 26 (5th Cir. 1989) .................................................................................................13

*Sally Holdings LLC v. Bd. Americas, Inc.*,
 2023 WL 4424599 (E.D. Tex. July 10, 2023) .....................................................................18

*Save Power Ltd. v. Syntek Fin. Corp.*,
 121 F.3d 947 (5th Cir. 1997) ...............................................................................................20

*Sec. & Exch. Comm'n v. Gordon*,
 2021 WL 5086556 (N.D. Tex. Nov. 1, 2021).......................................................................12

*Sec. & Exch. Comm'n v. Zale Corp.*,
 650 F.2d 718, 720 (5th Cir. 1981) .......................................................................................12

*Sherwin-Williams Co. v. Holmes Cnty.*,
 343 F.3d 383 (5th Cir. 2003) .................................................................................2, 16, 17, 18

*Shops & Garage at Canal Place, L.L.C. v. Wilson Canal Place II, LLC*,
 2020 WL 6194424 (E.D. La. Oct. 22, 2020) .......................................................................19

*Smitty's Supply, Inc. v. Hegna*,
 2017 WL 1837742 (E.D. La. May 5, 2017)..........................................................................17

*Space Expl. Techs., Corp. v. Bell*,
 701 F. Supp. 3d 626 (S.D. Tex. 2023) ...................................................................................8

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) ...............................................................................................12

*St. Paul Ins. Co. v. Trejo*,
 39 F.3d 585 (5th Cir. 1994) .................................................................................15, 19, 21

*Stamps v. Univ. of Texas At Austin*,
 2022 WL 526169 (W.D. Tex. Feb. 22, 2022).........................................................................8

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir. 1987) ................................................. 18

*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ................................................. 23

*Truinject Corp. v. Nestle S.A.*,
    2020 WL 6781578 (E.D. Tex. Nov. 18, 2020) ...................... 19

*Truman v. United States*,
    26 F.3d 592 (5th Cir. 1994) ................................................... 6

*United States Env't Servs. v. Am. Pollution Control Corp.*,
    2021 WL 6125058 (E.D. La. Dec. 28, 2021) .......................... 8

*Venator Grp. Specialty, Inc. v. Matthew/Muniot Fam., LLC.*,
    322 F.3d 835 (5th Cir. 2003) ................................................. 22

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007) ................................. 15

*Vulcan Materials Co. v. City of Tehuacana*,
    238 F.3d 382 (5th Cir. 2001) ................................................. 16

*W. World Ins. Co. v. Flom*,
    2019 WL 142288 (E.D. La. Jan. 9, 2019) .............................. 17

*Walmart Inc. v. U.S. Dept. of Justice*,
    21 F.4th 300 (5th Cir. 2021) ............................................. 2, 25

*Warner v. Surefox Consulting LLC*,
    2022 WL 526489 (N.D. Cal. Feb. 22, 2022) ........................... 7

*White v. U.S. Corr., L.L.C.*,
    996 F.3d 302 (5th Cir. 2021) ................................................... 6

**Statutes**

28 U.S.C. § 1391 ....................................................................... 3, 6

28 U.S.C. § 2201 ..................................................................... 10, 13

12 U.S.C. §§ 5841–5603 ............................................................ 4, 24

15 U.S.C. §§ 1693–1693r ........................................................... 4, 24

15 U.S.C. §§ 1601–1667f ........................................................... 4, 24

**Other Authorities**

Fed. Rule Civ. Proc. 12(b)(6)...............................................................................................6

## <u>INTRODUCTION</u>

Over the past four years, Plaintiffs Acima Digital, LLC and Acima Holdings, LLC (together, "Acima") and Aaron Allred (together with Acima, "Plaintiffs") have been the focus of improper agency overreach by the Consumer Financial Protection Bureau (the "CFPB" and, together with Rohit Chopra, "Defendants").  Disregarding the express statutory limitations on its authority, the CFPB has sought to suddenly reverse course and interject itself into state-regulated lease-to-own retail transactions.  Facing the prospect of being subject to a new and conflicting regulatory structure demanded by the CFPB, Acima sought a declaratory judgment to confirm that the CFPB's actions were both unconstitutional and in excess of its statutory authority.  In response, the CFPB retaliated by suing Plaintiffs in a different district—in the District of Utah —and now seeks to dismiss this declaratory judgment action.  This Court should deny the CFPB's motion in its entirety for at least four reasons.

*First*, venue is proper in the Eastern District of Texas, to which Acima has significant ties.  Acima's corporate parent (Upbound Group, Inc. ("Upbound")) is headquartered in Plano, Texas.  The majority (10 out of 13) of Acima's own corporate officers and *all* of its managers—officers with ultimate authority over Acima's business operations—are based in Plano.  As a result, major corporate decisions pertaining to Acima are made in this District.  Plano also houses Upbound's information technology services, which maintains and oversees corporate documents and records, including access to Acima's electronic records.

*Second*, a permanent injunction is appropriate.  Though the CFPB's investigation that resulted in the now-pending Utah action is complete, nothing prevents the CFPB from dismissing and refiling its complaint, or from initiating another improper investigative or enforcement action.  An agency cannot side-step injunctive restraint by racing to another court and arguing any

injunctive relief now is too late.  The CFPB's reliance on the Utah litigation is flawed and ignores well-settled law.  Under the first-to-file rule and Fifth Circuit precedent (which is consistent with Tenth Circuit precedent), it is *this Court* that must decide which of the pending actions (the one before this Court or the one in the District of Utah) gets to proceed.  Even if there were a reason to disagree with the first-to-file rule (and there is not), this Court at least should await the Utah court's ruling on Plaintiffs' pending motion to transfer the Utah case to the Eastern District of Texas.

*Third*, this Court has the power to issue a declaratory judgment and should exercise that power.  Plaintiffs seek confirmation that the CFPB's ongoing material interference with Acima's business exceeds the statutory and constitutional limits on its authority—precisely the type of relief the Declaratory Judgment Act was designed to provide.  There clearly is no "pending parallel state proceeding"—"a factor that weighs strongly against dismissal," *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 394 (5th Cir. 2003), and both fairness and efficiency support exercise of declaratory judgment jurisdiction in this first-to-file suit.

*Fourth*, there is no ripeness problem.  The CFPB's own suit in the District of Utah demonstrates the existence of an actual controversy, and Plaintiffs will suffer injury from the CFPB's ongoing investigation and enforcement efforts in the absence of a declaratory judgment.  The CFPB's reliance on *Walmart Inc. v. U.S. Dept. of Justice*, 21 F.4th 300 (5th Cir. 2021)—a case where the declaratory judgment would not have provided relief against a parallel government enforcement action—is inapposite.

## STATEMENT OF ISSUES

1.      Whether venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B), when major decisions relevant to the issues before the Court were made in this District, where the corporate parent company, and many of its officers and managers, reside.

2.      Whether Plaintiffs are entitled to injunctive relief where the CFPB declined to provide assurances that it will refrain from future investigations and enforcement actions that exceed its statutory and constitutional authority, and where, under the first-to-file rule, this Court should be the one to determine which of two parallel actions should proceed.

3.      Whether this Court should grant Plaintiffs' request for relief under the Declaratory Judgment Act and confirm that Defendants' actions against Acima exceed the statutory and constitutional limits on the CFPB's authority.

4.      Whether Plaintiffs' declaratory judgment action challenge is ripe.

## BACKGROUND

Acima is a lease-to-own company that offers consumers flexible, short-term renewable leases (Rental Purchase Agreements, or "RPAs").  Am. Compl. ¶ 7.  Acima has operated in the lease-to-own industry for over a decade.  Although Acima is based in Draper, Utah, most of its managers and officers are based in Plano, Texas.  *Id.* ¶¶ 27, 28, 34.

Acima neither operates as a lender nor offers credit.  Am. Compl. ¶ 7.  Instead, its RPAs permit consumers to possess, under a lease and on a short-term renewable basis, household merchandise and other durable goods owned by Acima on terms flexible to their needs.  *Id.*  Acima approves certain consumers, purchases the goods they seek to obtain from a third party retailer, and then leases the goods to the approved consumers pursuant to the RPA.  *Id.* ¶ 8. The consumer determines whether to continue possession of Acima's property by making optional lease

payments or, alternatively, to terminate the lease at any point without penalty. *Id.* For those customers who seek ownership, if the customer continues to make the specified number of optional lease renewal payments, the customer eventually will take ownership of the item outright as provided by their RPA and the state laws that govern the transaction. *Id.* Separately, the consumer may elect to exercise an early purchase option at any time. *Id.*

Acima's business model is not new. Am. Compl. ¶ 10. Lease-to-own transactions have existed in the United States for many decades, serving millions of consumers each year, and are heavily regulated by individual states. *Id.* At least 46 states and the District of Columbia maintain separate comprehensive laws or regulatory structures governing lease-to-own transactions and recognizing them as distinct from credit transactions. Because of this robust state regulatory framework, Congress repeatedly has declined to enact legislation regulating lease-to-own transactions. *Id.*

Disregarding this well-developed state-law regulatory structure, in 2020, the CFPB commenced an investigation of Acima's lease-to-own business for supposed violations of various federal statutes. Am. Compl. ¶¶ 10, 57. The relevant provisions of the statutes on which the CFPB relies—the Consumer Finance Protection Act ("CFPA"), 12 U.S.C. §§ 5841–5603; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f; and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693–1693r, *see* Am. Compl. ¶ 11—have no application to Acima's lease-to-own transactions, as Acima is not a lender and does not offer credit. *Id.* ¶¶ 12, 15.[1] Acima and Allred nevertheless cooperated in good faith with the CFPB's multi-year investigation, despite their expressed objections to the CFPB's lack of statutory authority to pursue its investigation. *Id.*

---

[1]    Indeed, even the CFPB's own prior guidance acknowledged that lease-to-own transactions do not constitute "credit." Am. Compl. ¶ 19.

Eventually, given the substantial harm from the CFPB's improper investigation, Plaintiffs filed this declaratory judgment action.  ECF No. 1.

Defendants' actions are also unconstitutional.  Specifically, the CFPB violated due process by failing to provide Plaintiffs with fair notice that the CFPB would suddenly change its prior position and begin retroactively regulating lease-to-own transactions by classifying them as "credit" transactions.  Am. Compl. ¶ 19.  The CFPB previously issued public guidance, upon which Acima and Allred relied, explaining that it did not possess the authority to regulate this industry, and now the CFPB has reversed course without fair notice.

The CFPB's funding mechanism also runs afoul of the Appropriations Clause and the Dodd-Frank Act, the CFPB's funding statute.   In *CFPB v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024), the Supreme Court upheld the constitutionality of the CFPB's funding statute because the CFPB drew from the combined earnings of the Federal Reserve System, which is money destined for the Treasury's general fund.  Am. Compl. ¶ 20.  The Federal Reserve, however, has not made a profit since 2022, which means there have been no actual earnings to fund the CFPB consistent with the Appropriations Clause and the Dodd-Frank Act.  *Id*.  The CFPB has violated the law by exercising authority under these circumstances.

On July 22, 2024, Plaintiffs filed a declaratory judgment action with this Court, seeking confirmation that the CFPB's actions contravened constitutional and statutory limits on its authority.  In response, the CFPB commenced an enforcement lawsuit in a different district—the District of Utah.  *See CFPB v. Acima Holdings*, No. 2:24-cv-00525-DBB-CMR (D. Utah July 26, 2024).  Plaintiffs moved to transfer the Utah action to this Court, and that motion remains pending.  *CFPB*, No. 2:24-cv-00525-DBB (D. Utah Sept. 16, 2024), ECF No. 11.  On September 23, 2024,

the CFPB moved to dismiss Plaintiffs' complaint and to stay discovery pending resolution of its motion to dismiss.

## STANDARD OF REVIEW

In resolving a motion to dismiss, courts "accept the well-pleaded allegations in the complaint as true" and "construe those allegations in the light most favorable to the plaintiff." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). A motion under 12(b)(1) should be granted only if "it appears ***certain*** that the plaintiffs cannot prove ***any set of facts*** in support of their claim that would entitle them to relief." *McAllister v. F.D.I.C.*, 87 F.3d 762, 765 (5th Cir. 1996) (quotation marks and citation omitted) (emphasis added). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) (quotation marks and citation omitted). "A motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (quotation marks and citation omitted).

## ARGUMENT

### I.   Venue Is Proper in this District.

The Eastern District of Texas is a proper venue for this lawsuit. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2); *see also* § 1391(e)(1)(B) (similar for defendant federal agency officials). That test is satisfied here.

Upbound, Acima's ultimate corporate patent, has its headquarters and principal place of business in Plano, Texas.  Ten of Acima's officers and all three of its managers—officers with ultimate authority over Acima's business operations—also are located in Plano.  Am. Compl. ¶¶ 26–27.  As a result, "[m]ajor corporate decisions pertaining to Acima are made in Plano, Texas." *Id*. ¶ 26; *see also id*. ¶ 31.  Courts have held repeatedly that venue is proper in the district where decisions underlying the complaint were made.  *See, e.g.*, *Warner v. Surefox Consulting LLC*, 2022 WL 526489, at *5 (N.D. Cal. Feb. 22, 2022) ("[V]enue in this district is proper because this is the district where decisions were allegedly made[.]").  The CFPB offers no valid reason to depart from this well-settled rule.

Moreover, Upbound's information technology shared services function, which maintains and oversees corporate documents and records, including access to Acima electronic records, is located in Plano.  Am. Compl. ¶ 32.  Thus, Texas is home to "relevant parties and documents."  *Id.* ¶ 26.  Given Acima's extensive connections to the Eastern District of Texas, Acima's choice of forum was proper.  And because the CFPB is based in Washington, D.C., "the costs to [CFPB] and [its] counsel to travel to Texas or Utah . . . would be substantial regardless of" the case venue. *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 731 (N.D. Ill. 1997).

Defendants stake their venue arguments on two decisions by this Court, but Defendants' reliance is misplaced and only demonstrates the weakness of their arguments.  *See Parks v. AIG*, 2022 WL 17875810 (E.D. Tex. Dec. 22, 2022) (Jordan, J.); *Roberts v. Millennium Health, LLC*, 2019 WL 13216542, at *3 (E.D. Tex. Dec. 12, 2019) (Jordan, J.).  In *Parks*, the plaintiffs brought claims against a long list of Oklahoma judicial and law enforcement officials for unethical and unlawful conduct at an Oklahoma County Courthouse—there was no logical or apparent connection whatsoever to the Eastern District of Texas, unlike here.  2022 WL 17875810, at *1–

3.  In citing to *Roberts*, Defendants fail to mention that the motion was unopposed—the plaintiff brought a case in Texas to challenge a non-compete provision with his former employer in Ohio, who lacked any connection to Texas.  2019 WL 13216542, at *1–3.  This Court's dismissals of the likely-frivolous nuisance suits in *Parks* and *Roberts* have no bearing here.

## II.    Plaintiffs Are Entitled to Injunctive Relief.

Plaintiffs are entitled to an injunction against the CFPB, including any further investigative and enforcement actions that the CFPB may take against Plaintiffs' legitimate lease-to-own business, and Allred's involvement with respect to that business.

### A.  Plaintiffs Meet the Requirements for an Injunction.

To obtain a permanent injunction, a party must satisfy the traditional four-factor test. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013).  A party must show that (1) "it has suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction."  *Id.* (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).[2]

Plaintiffs have alleged that the CFPB's actions to which they are subjected are both unconstitutional and exceed the CFPB's statutory authority.  Am. Compl. ¶¶ 3, 81.  That is an irreparable injury that only an injunction may redress.  *See Space Expl. Techs., Corp. v. Bell*, 701 F. Supp. 3d 626, 634 (S.D. Tex. 2023) (quoting *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023)) ("Plaintiff is being subjected 'to unconstitutional agency authority,' which

---

[2]    Defendants address only the first two factors, thereby conceding that the remaining factors favor the injunction.  *See United States Env't Servs. v. Am. Pollution Control Corp.*, 2021 WL 6125058, at *2 n.17 (E.D. La. Dec. 28, 2021); *Stamps v. Univ. of Texas At Austin*, 2022 WL 526169, at *9 n.7 (W.D. Tex. Feb. 22, 2022).

'is impossible to remedy once the proceeding is over.'").  Defendants argue that the relief Plaintiffs seek can be obtained in the Utah action (Mot. 10), but that is not the case.

Plaintiffs face not only the Utah lawsuit but also the CFPB's continued assertion of its jurisdiction and its investigative and enforcement powers into other aspects of Acima's lease-to-own business offerings not at issue in the Utah action.  Am. Compl. ¶ 84.  Nothing prevents the CFPB from dismissing the Utah lawsuit and then refiling in Utah or another jurisdiction (provided venue is proper).  An injunction would preclude the CFPB from initiating another improper investigation of Acima's lease-to-own business and Allred's involvement in the future.  In fact, the CFPB's actions in the District of Utah are proof positive that these concerns are valid.  A district court in Utah ruled recently that the CFPB's attempt to recharacterize a competitor's lease-to-own transactions as credit, as it seeks to do here, exceeds the scope of its statutory authority under federal consumer protection statutes.  *See Consumer Fin. Prot. Bureau v. Snap Fin. LLC*, No. 2:23-cv-00462-JNP-JCB, 2024 WL 3625007 (D. Utah Aug. 1, 2024).  Nevertheless, the CFPB subsequently commenced a similar action against Acima and Allred, apparently gaming for a different result before a different judge.  This declaratory judgment action serves as a crucial bulwark against continued jockeying by the agency with regard to lease-to-own transactions.

Defendants rely on *Buntrock v. SEC*, 347 F.3d 995 (7th Cir. 2003) (*see* Mot. 10, 12), but that out-of-circuit case is inapposite.  There, the plaintiff alleged that the Securities and Exchange Commission ("SEC") failed to investigate him in an impartial manner before bringing suit. *Buntrock*, 347 F.3d at 996.  The Seventh Circuit held that "'*[a]nything* [plaintiff] could achieve in the present suit he could achieve by interposing an identical defense' in the SEC's suit." *Id.* at 997.  By contrast, Plaintiffs here are seeking to stop the CFPB from other investigations and administrative actions unlawfully targeting them for enforcement of inapplicable federal statutes.

9

Am. Compl. ¶ 84.   Contrary to Defendants' arguments, a motion to dismiss in the Utah action could not address these concerns regarding Defendants' zealous federal overreach.  *See also Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 836 (7th Cir. 2005) (affirming grant of declaratory judgment action because plaintiff had legal basis to file declaratory judgment action under 28 U.S.C. § 2201 and distinguishing *Buntrock*, on the basis that the plaintiff there had no subject matter jurisdiction).  Similarly, *Morgan Drexen, Inc. v. Consumer Financial Protection Bureau*, 785 F.3d 684, 695 (D.C. Cir. 2015) (Mot. 12) has no application here, as the plaintiff in that suit did "not maintain that waiting for a decision" from the parallel federal action would cause it "irreparable injury."  Plaintiffs here assert that they are suffering ongoing, irreparable harm.  Am. Compl. ¶ 79.

The CFPB argues that Plaintiffs' litigation costs alone do not merit an injunction.  Mot. 11. But Plaintiffs have alleged injuries beyond litigation cost—namely, reputational and commercial injury in a consumer-facing industry where public knowledge of the CFPB's efforts against Acima and Allred foreseeably will have an adverse impact, damage Acima's goodwill, and result in the potential loss of customers and third party retailer locations for its offerings particularly in the competitive lease-to-own industry.  As the Fifth Circuit held, "[g]rounds for irreparable injury include loss of control of reputation."  *Emerald City Mgmt., L.L.C. v. Kahn*, 624 F. App'x 223, 224 (5th Cir. 2015) (per curiam) (citation omitted); *see also Phi Theta Kappa Honor Soc'y v. HonorSociety.Org, Inc.*, 2024 WL 1335091, at *3 (S.D. Miss. Mar. 28, 2024) ("The Fifth Circuit has held that damage to a business's reputation can constitute irreparable injury."); *Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 604 (E.D. La. 2018) ("The potential harm to plaintiffs' reputation and goodwill cannot be quantified, and rises to the level of irreparable harm.").  Here, Plaintiffs have alleged that they have "incurred reputational injury due to the

10

ongoing shadow cast by the CFPB investigation and the press release the CFPB issued when it filed the Utah Suit."  Am. Compl. ¶ 79.

Defendants' arguments are also misguided at a fundamental level.  Under the first-to-file rule and Tenth Circuit precedent (which is consistent with Fifth Circuit law), "the court which *first obtains jurisdiction* should be allowed to *first decide* issues of venue."  *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982) (emphasis added).  Since *Hospah*, district courts within the Tenth Circuit consistently have followed that circuit's preference that they defer to the first-filed court to conduct the first-to-file analysis.  *See, e.g.*, *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010).  Plaintiffs have filed a motion to transfer the Utah litigation to this District, and that motion is fully briefed and remains pending.  Even if there were a reason to disagree with the first-to-file rule (and there is not), this Court should await the Utah court's ruling on Plaintiffs' pending motion to transfer the Utah action before deciding the first-to-file issue in this case.  Then, it will be for *this Court* to decide which action should proceed, and in what venue.  The CFPB's urging that this Court dismiss this action first, and force Plaintiffs to challenge the CFPB's unconstitutional and extra-statutory actions in their lawsuit in the District of Utah, puts the cart before the horse.

Principles of comity further support an injunction here.  To the extent the CFPB is acting beyond its constitutional and statutory authority (and it is), injunctive relief should issue even if the agency would prefer to litigate the action in a different venue.  In their motion, Defendants do not challenge the merits of Plaintiffs' allegations concerning the agency's lack of constitutional and statutory authority.  Defendants would have comity favor the federal agency's venue choice (Mot. 12), but that is not the law.

### B.  Plaintiffs Have Standing To Seek Injunctive Relief.

Plaintiffs have established standing to seek injunctive relief.  Standing "addresses the question of who may properly bring suit in federal court."  *Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affs.*, 2008 WL 5191935, at \*2 (N.D. Tex. Dec. 11, 2008).  "To have standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).  An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

The threat of harm Plaintiffs face is actual and imminent.  Plaintiffs have sought an injunction to "enjoin the CFPB from its continued assertion of investigative powers, including the now-pending Utah Suit and any future administrative action or litigation, against Acima and/or Allred."  Am. Compl. ¶ 84.  Defendants contend there is nothing to suggest any future investigations, enforcement proceedings, or other regulatory action.  Mot. 14.  But "injunctive relief may be proper 'when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions.'"  *Sec. & Exch. Comm'n v. Gordon*, 2021 WL 5086556, at \*8 (N.D. Tex. Nov. 1, 2021) (quoting *Sec. & Exch. Comm'n v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981)); *see also Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citation omitted) ("[O]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."); *Lujan*, 504 U.S. at 564 n.2 ("'[I]mminence' is an 'elastic concept[.]'") (citation omitted).

As the CFPB's four-year investigation and ongoing litigation demonstrate, Plaintiffs' concerns are not speculative.  The fact that the CFPB filed suit against Plaintiffs in Utah shortly

after Plaintiffs requested relief from this Court shows that Plaintiffs' concerns are warranted. Again, absent an injunction from this Court, nothing prevents the CFPB from dismissing the Utah action, re-starting their improper investigation, and filing a new enforcement lawsuit. Notably, the CFPB does not suggest that it will refrain from future enforcement proceedings against Acima or Allred and it declined to provide any such assurances during Plaintiffs' unsuccessful attempt to reach a resolution prior to this litigation. *See* Mot. 14.

### III.  This Court Has Jurisdiction over Plaintiffs' Declaratory Judgment Relief Request.

Defendants urge a rule under which federal agencies can dictate the timing and venue of litigation involving their authority. No such rule exists, and the Court should reject Defendants' efforts to neuter the Declaratory Judgment Act in favor of federal agencies.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[I]t is a matter for the district court's sound discretion whether to decide a declaratory judgment action." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (citation omitted). In exercising their discretion, district courts "may not decline on the basis of whim or personal disinclination." *Hollis v. Itawamba Cnty. Loans*, 657 F.2d 746, 750 (5th Cir. 1981).

This Court should maintain its jurisdiction under the Declaratory Judgment Act. *First*, the relief Plaintiffs seek—a clarification of the legality and constitutionality of the CFPB's investigation—is exactly the sort of relief a declaratory judgment is designed to address. *Second*, principles of fairness and efficiency support exercise of declaratory jurisdiction. *Third*, this Court should maintain jurisdiction under the first-to-file doctrine, which instructs that when related cases

13

are pending before multiple federal courts, the court in which the case was *first filed* should have jurisdiction to decide which case should proceed.

### A. Plaintiffs' Request for Declaratory Relief Is Consonant with the Declaratory Judgment Act.

The relief Plaintiffs seek is precisely what the Declaratory Judgment Act was enacted to address. "[T]he Declaratory Judgment Act's purpose is to allow 'parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy.'" *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023) (citation omitted). The Act "expands the scope of available remedies and permits persons to seek a declaration of the constitutionality of a disputed governmental action." *Morris v. Dearborne*, 69 F. Supp. 2d 868, 880 (E.D. Tex. 1999).

Plaintiffs have alleged two independent constitutional infirmities with the CFPB's enforcement activity concerning Acima's lease-to-own business and Allred's involvement therein. Both support granting declaratory relief here. *First*, the CFPB's enforcement action violates Plaintiffs' constitutional due process rights because Plaintiffs were entitled to fair notice that the CFPB would seek to reverse its prior positions and suddenly regulate lease-to-own transactions by classifying them as "credit" before Acima (and Allred) engaged in those transactions. Am. Compl. ¶ 100. *Second*, the CFPB's funding mechanism is unconstitutional because the Federal Reserve currently has no earnings from which to fund the CFPB. *Id.* ¶ 105. For these two reasons, declaratory relief is proper here. *See Brister v. Faulkner*, 214 F.3d 675, 681 (5th Cir. 2000) ("[D]eclaratory judgment relief is a proper way for individuals to proceed to ensure that their constitutional rights are protected[.]").

Defendants' contention that Plaintiffs' lawsuit is "contrary to the purpose of the Declaratory Judgment Act" (Mot. 15) is unfounded. If the declaratory judgment lawsuit before

this Court is not an improper anticipatory lawsuit (and it is not), then exercising declaratory judgment jurisdiction here would not result in a "disorderly race to the courthouse." *Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976), *cited at* Mot. 16.  The cases the CFPB invokes involved qualitatively different circumstances.  For example, in *Odeco, Inc. v. Bridgett*, 22 F.3d 1093 (5th Cir. 1994) (per curiam) (*cited at* Mot. 15), the Fifth Circuit upheld the dismissal of a declaratory-judgment action where there was a state-court proceeding that had been filed ***over two years prior to*** the declaratory judgment action.  *See Odeco, Inc. v. Bridgett*, 1993 WL 165687, at *1 (E.D. La. May 7, 1993), *aff'd*, 22 F.3d 1093 (5th Cir. 1994).  Defendants' reliance on *Hanes* (Mot. 16), fares no better.  In *Hanes*, the D.C. Circuit held a declaratory judgment improper where "the parties contemplated that contractual disputes growing out of the assignment contract would be resolved not by the United States District Court in the District of Columbia—or indeed by any court—but rather by an arbitration board pursuant to the rules and regulations of the International Chamber of Commerce."  531 F.2d at 596.  No such arbitration clause is present here.[3]

## B.  The *Trejo* Factors Support Plaintiffs' Request for Declaratory Relief.

Declaratory relief is proper under the factors outlined by the Fifth Circuit in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994).  In determining whether the court should decide a declaratory judgment action, the Fifth Circuit has identified seven nonexclusive factors.[4]

---

[3]      Defendants' other cited cases turn on facts not present here.  *See, e.g.*, *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (declaratory judgment improper where "plaintiff's action, jurisdictionally and on the merits, is so ill-defined, the Court suspects its use is more a bargaining chip than a sincere prayer for relief"); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 6255733, at *6 (E.D. Tex. Nov. 22, 2019) (declaratory judgment claims were duplicative of counterclaims ***and*** affirmative defenses already proffered in plaintiff's Answer).

[4]      The factors are: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or

The court of appeals has explained that these seven factors address three themes: (1) "the proper allocation of decision-making between state and federal courts," (2) "fairness," and (3) "efficiency." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390–92 (5th Cir. 2003). All three factors support jurisdiction over Plaintiffs' declaratory judgment claims.

*First*, the proper allocation of decision-making between state and federal courts is not at issue here because there is no pending parallel state lawsuit. Both the Texas action and the Utah action are pending in *federal* courts. Likewise, this action does not concern a state judicial decree. Concerns of federalism and comity thus have no bearing here, and this factor weighs in favor of retaining jurisdiction. *See Sherwin-Williams Co.*, 343 F.3d at 394 ("The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action.").

*Second*, fairness instructs that this Court decide pressing constitutional and statutory issues arising from government agency overreach. In addressing fairness, courts must "analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Sherwin-Williams Co.*, 343 F.3d at 391. The Court considers whether the plaintiff filed suit in anticipation of the defendant's lawsuit, whether the plaintiff engaged in forum shopping, and whether other inequities exist. *Id.*

The CFPB asserts that because Plaintiffs anticipated that the CFPB may bring a lawsuit, they must be barred from seeking declaratory relief. But declaratory judgment lawsuits "are

---

to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001).

16

routinely filed in anticipation of other litigation." *Sherwin-Williams Co.*, 343 F.3d at 391. Plaintiffs' declaratory judgment action was a legitimate preemptive response to the CFPB's improper and ongoing overreach.

The CFPB's proffered rule would bar declaratory relief in the enforcement context. "The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Sherwin-Williams Co.*, 343 F.3d at 397; *see also W. World Ins. Co. v. Flom*, 2019 WL 142288, at *3 (E.D. La. Jan. 9, 2019) (It is natural plaintiffs anticipate litigation, as "[o]therwise, there would be no reason to seek a declaration of rights"); *Smitty's Supply, Inc. v. Hegna*, 2017 WL 1837742, at *4 (E.D. La. May 5, 2017) ("[A] proper purpose of a declaratory judgment action is to allow potential defendants to resolve disputes without waiting to be sued or until the prescriptive period expires[.]"). Plaintiffs' knowledge that the CFPB's enforcement efforts could result in an enforcement action, without more, does not demonstrate a "race to res judicata." *See Sherwin-Williams Co.*, 343 F.3d at 399 (holding there was "no evidence that the declaratory judgment defendants had been restricted from filing state court actions").

"The filing of every lawsuit requires forum selection." *Sherwin-Williams Co.*, 343 F.3d at 391. Here, as in *Sherwin-Williams*, the choice of the forum "did not change the law that would apply," and there was "no evidence" that the plaintiff brought its declaratory judgment action "in search of more favorable law." *Id.* at 399; *see also Mass. Bay Ins. Co. v. Usie*, 2018 WL 1834368, at *5 (W.D. La. Mar. 26, 2018) (maintaining jurisdiction of declaratory action where same law would govern regardless where issues were decided), *report and recommendation adopted sub nom. Mass. Bay Ins. Co. v. Usie*, 2018 WL 1833312 (W.D. La. Apr. 17, 2018). Here, the issues

raised by Plaintiffs are grounded in the U.S. Constitution and federal statutes and will be the same in either forum as a result.

Defendants' authority is inapposite.  In *Sally Holdings LLC v. Bd. Americas, Inc.*, 2023 WL 4424599, at *6 (E.D. Tex. July 10, 2023) (*cited in* Mot. 18–21), for example, the court granted defendants' motion to dismiss where, in the competing actions in Texas and Massachusetts, the "sole issue" to be resolved was "one of Massachusetts contract law," and "Massachusetts courts— either federal or state—are better equipped to apply Massachusetts substantive law."  Here, however, both forums are equally equipped to apply federal law.  *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746 (7th Cir. 1987) (*cited in* Mot. 16), is also inapplicable.  That case involved a circuit split between the Fifth and the Seventh Circuits on an issue of substantive law, with the Seventh Circuit (but not the Fifth Circuit) expressly rejecting a first-to-file presumption. 819 F.2d at 750.  In those circumstances, there may be legitimate forum-shopping concerns in extreme cases, but they are absent here.

*Third*, the efficiency factors also weigh in favor of retaining jurisdiction, as there is no risk of "inconsistent state and federal court judgments, especially in cases involving state law issues." *Sherwin-Williams Co.*, 343 F.3d at 391.  Courts consider whether there is a pending action in which all the matters in controversy may be litigated, whether the federal court is a convenient forum for the parties and witnesses, and whether retaining the lawsuit would serve judicial economy.  *Id.* at 391–92.  None of these considerations supports dismissal in the instant case.

Contrary to Defendants' argument, there is no risk of piecemeal litigation because Plaintiffs allege the ***entire lawsuit*** in Utah is improper due to the CFPB's illegal and unconstitutional funding mechanism and due process violations and its lack of jurisdiction over Acima's lease-to-own transactions.  *See* Am. Compl. ¶¶ 105–08.  Maintaining this lawsuit also would not contravene

18

judicial economy because both actions are in their infancy.  *Shops & Garage at Canal Place, L.L.C. v. Wilson Canal Place II, LLC*, 2020 WL 6194424, at *10 (E.D. La. Oct. 22, 2020) (judicial economy did not weigh in favor of dismissal where both cases were in early stages).

The efficiency analysis under *Trejo* also considers which forum is most convenient. Defendants have made no effort to show that this Court is an inconvenient forum, especially as compared to Utah.  *See* Mot. 18 n.5.  As set forth above and in the operative complaint, key witnesses are located in this district, including ten of Acima Digital, LLC's officers and three of its managers, and ten of Acima Holdings, LLC's officers and three of its managers.  Am. Compl. ¶¶ 27, 28.  Upbound's Chief Executive Officer and General Counsel & Corporate Secretary are located in Plano, Texas, along with Upbound's Chief Technology Officer.  *Id.* ¶¶ 29, 30.  These efficiency points weigh in favor of this Court retaining its jurisdiction.  *See Great Am. Ins. Co. v. ACE Am. Ins. Co.*, 2018 WL 1916567, at *5 (N.D. Tex. Apr. 20, 2018), *aff'd sub nom. E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289 (5th Cir. 2020) (forum was convenient to parties and witnesses where president, secretary, and insurance broker were in federal forum).

The *Trejo* factors weigh decisively in favor of this Court maintaining its jurisdiction over this matter.

### C.  This Court Should Maintain Jurisdiction Under the First-to-File Rule.

The first-to-file rule reinforces that this Court should maintain jurisdiction.  "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Truinject Corp. v. Nestle S.A.*, 2020 WL 6781578, at *1 (E.D. Tex. Nov. 18, 2020) (citation omitted).  But, in the Fifth Circuit, "'[o]nce the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] . . . no longer up to the [second filed court] to resolve the

19

question of whether both should be allowed to proceed.'" *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)).  Rather, "under Fifth Circuit precedent[,] that balancing act [of determining which case should proceed] *is reserved only for the first-filed court*"—i.e., this Court.  *Id.* (emphasis added); *see Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.").  "In the absence of compelling circumstances the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann*, 439 F.2d at 407 (citations omitted).

The CFPB asserts that the first-to-file rule does not apply in instances of "forum shopping," but it fails to establish that Plaintiffs engaged in any improper conduct—including forum shopping—when bringing this action.  Defendants cast too wide a net in their attempt to characterize forum shopping.  Time and again, courts in this circuit have upheld the first-to-file rule, explaining that "every time a lawsuit is filed, a forum choice is made" and is not "forum-shopping." *Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC*, 2006 WL 1984627, at *5 (S.D. Tex. July 14, 2006) (honoring first-to-file rule in declaratory action where defendant failed to show how Texas forum was "inappropriate, burdensome, or prejudicial so as to make the forum choice abusive"); *Apache Corp. v. N.Y.C. Employees' Ret. Sys.*, 2008 WL 1775221, at *2 (S.D. Tex. Apr. 15, 2008) (honoring first-to-file rule for declaratory judgment action where the "record evidence fails to show that defendants delayed their filing of the parallel New York lawsuit because of ongoing settlement discussions").  Defendants point to no evidence suggesting that Plaintiffs acted in bad faith to deter them from filing suit.  The fact that the CFPB would have

chosen a different forum—undoubtedly for its own strategic reasons—does not render Plaintiffs' venue choice "forum shopping."

For these reasons, Defendants' authority is without merit here.  *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990) (*cited in* Mot. 19), for example, predated the *Trejo* factors, and saw the plaintiff abuse the defendant's "good faith effort to settle out of court" as a means to stall a lawsuit.  Likewise, in *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004) (*cited in* Mot. 19–20), the court found that the plaintiffs' "participation in settlement negotiations and affirmative representations of that participation was to lull the [defendants] into believing that that amicable negotiation was still possible, and that the filing of these declaratory actions was an effort to engage in procedural fencing to secure [their] choice of forum."  Defendants make no such accusations because they cannot.  *Federated Rural Elec. Ins. Exch. v. Jourdan*, 2017 WL 1399608, at *3 (E.D. La. Apr. 19, 2017) (*cited in* Mot. 19), meanwhile, involved concerns of precedential and binding effects on a *state* court suit.

The CFPB asks this Court to depart from well-settled precedent.  What the CFPB proposes is something different from the first-to-file rule—its proposal amounts to a stricter first-to-threaten rule.  Without requisite indicia of bad faith, this novel approach would block declaratory actions (potentially for years) as soon as the CFPB's investigatory or enforcement efforts culminate in a decision to *consider* filing a lawsuit.  Russell B. Hill, *Should Anticipation Kill Application of the Declaratory Judgment Act?*, 26 T. Jefferson L. Rev. 239, 256 (2004) ("Under this logic, a potential plaintiff could keep control of the forum indefinitely").  The nature of an agency enforcement action is distinguishable from traditional commercial disputes arising between private litigants, *i.e.,* the context for nearly all the first-to-file case law cited by the CFPB.  The deck is already stacked in favor of federal agencies that wield extensive pre-litigation leverage over

21

potential defendants.  Foreclosing availability of declaratory relief to combat improper exercise of such authority through the CFPB's unsupported application of the first-to-file rule would further tilt this balance and should be rejected.

### IV.    Plaintiffs' Claims Are Ripe.

Plaintiffs' claims are ripe and ready for adjudication.  "Ripeness counsels against 'premature' adjudication by distinguishing matters that are 'hypothetical' or 'speculative' from those that are poised for judicial review." *Mosley v. Liberty Mut. Fire Ins. Co.*, 2019 WL 2494586, at *4 (E.D. Tex. May 22, 2019) (quoting *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005)), *report and recommendation adopted*, 2019 WL 2492003 (E.D. Tex. June 13, 2019).  The "key considerations" for ripeness are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (citation omitted).

The ripeness doctrine "exists in some tension" with the determination of rights a declaratory judgment necessarily entails. *Braidwood Mgmt., Inc.*, 70 F.4th at 930.  So, "[i]n the declaratory judgement context, whether a particular dispute is ripe for adjudication turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Grp. Specialty, Inc. v. Matthew/Muniot Fam., LLC.*, 322 F.3d 835, 838 (5th Cir. 2003).  "[T]he fact that certain contingencies pertaining to plaintiff's potential liability remain executory at the time of the declaratory suit does not defeat jurisdiction." *Id.* at 840.  This action is ripe for three reasons.

*First*, an actual controversy exists.  "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed. App'x 159, 163 (5th Cir. 2015) (citation omitted).  Plaintiffs filed their complaint under the threat of litigation, and four days thereafter, the

threat materialized:  Defendants filed suit.  *See Consumer Fin. Prot. Bureau v. Acima Holdings et al.,* Case No. 2:24-cv-00525-DBB-CMR (D. Utah July 26, 2024).

*Second*, Plaintiffs will suffer hardship if the Court withholds consideration of their claims. "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'"  *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (citation omitted). Practical harms are "an important consideration in light of [the Supreme] Court's modern ripeness cases."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733–34 (1998).

Here, the practical harms are great.  Critically, the CFPB has been investigating Plaintiffs for ***four years***, and Plaintiffs will continue to suffer from Defendants' improper actions given that they have now escalated their investigation, filed suit, and issued a public press release announcing the lawsuit that was replete with one-side allegations and disparaging characterizations.  *See, e.g., Certain Underwriters at Lloyd's London v. A & D Ints., Inc.*, 197 F. Supp. 2d 741, 750 (S.D. Tex. 2002) (finding harm where it was clear that plaintiffs "have already undertaken some expenses in defending [defendants] to date, and it is no mystery that [plaintiffs] will continue to rack up significant defense costs on [defendants'] behalf until the conclusion of the state court case"); *Consumer Data Indus. Ass'n v. Tex. through Paxton*, 564 F. Supp. 3d 506, 514 (W.D. Tex. 2021) (finding hardship where plaintiffs would be forced to change their behavior "or risk a state enforcement action"), *aff'd*, 2023 WL 4744918 (5th Cir. July 25, 2023).  As explained *supra* at Part II.A, Plaintiffs have suffered and will continue to suffer another practical harm of reputational injury.  *See, e.g., Luxottica of Am., Inc. v. Brave Optical, Inc.*, 2022 WL 20334591, at *4 (E.D. Tex. Nov. 29, 2022) (claims were ripe where party's claims rested on "subsequent ramifications

for its reputation and public goodwill"); *Doe v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 2021 WL 5882625, at *7 (S.D. Tex. Dec. 13, 2021) (holding that "tarnished reputation" and "economic loss" could demonstrate hardship and claims were therefore ripe).   These harms are sufficient for ripeness.

*Third*, Plaintiffs' claims are fit for judicial decision.  The Fifth Circuit has clarified that a matter "is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."  *Bowman v. RJM Ctr., LLC*, 2015 WL 4722110, at *3 (E.D. Tex. Aug. 7, 2015) (citation omitted).  The legal questions presented in this matter are clear and do not require further factual development.  Has the CFPB's investigation (and subsequent initiation of litigation) exceeded its statutory authority under the plain language of the CFPA, the EFTA, and the TILA with regard to Acima's lease-to-own transactions and offers to consumers, and Allred's participation therein?  Am. Compl. ¶¶ 85–97.   Does the CFPB's enforcement activity concerning Allred and Acima's lease-to-own business violate the Constitution, both because Plaintiffs were not provided fair notice and because the CFPB's funding mechanism supporting this investigation and lawsuit is unconstitutional under the Appropriations Clause? *Id.* ¶¶ 98–108.  These are legal questions ripe for review.  While Defendants spend much time criticizing the allegedly factual nature of whether Acima offers credit, their motion is silent regarding the justiciability of Plaintiffs' constitutional questions.  *See* Mot. 23–26.  In *Snap*, the Utah district court ruled at the motion to dismiss stage that the CFPB lacked statutory jurisdiction to regulate lease-to-own transactions, under the same consumer financing statutes at issue here, without the need for further fact finding.  2024 WL 2625007, at *4-8 (holding that lease-to-own transactions substantially similar to Acima's "do[] not meet the statutory definition of credit").  Notwithstanding the recent ruling in *Snap*, to the extent Defendants argue that factual questions

remain outstanding for Plaintiffs' statutory claims, courts have held that a matter is ripe for decision where the *material* facts are not in dispute.  *See, e.g., French v. Boner*, 940 F.2d 659 (6th Cir. 1991) (unpublished) (case was ripe where "necessary facts" were known).

Defendants also rely on the Fifth Circuit's decision in *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 312 (5th Cir. 2021) (*cited in* Mot. 22–25).  But in that case, the government's "unequivocal position" was "materially different from the one Walmart challenge[d]," and thus the "lack of a clear position on the part of the government rendered the case premature."  *Id.* at 312.  As a result, the declaratory judgment would not have necessarily provided relief against a parallel government enforcement action.  In contrast, Plaintiffs clearly have articulated the position that Defendants take here: the CFPB's targeting of Acima's lease-to-own transactions as "credit," which Plaintiffs maintain is unconstitutional and far outside the express boundaries of the CFPB's limited statutory authority.

For these reasons, "because no further facts are required to adjudicate plaintiffs' specific claims, and there is a hardship to them in withholding judgment," the present matter is ripe for adjudication.  *Braidwood Mgmt., Inc.*, 70 F.4th at 923.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants' Motion to Dismiss, retain jurisdiction over Plaintiffs' action, and grant Plaintiffs all other relief to which they are entitled.

Dated:  October 28, 2024                    Respectfully submitted,

                                           */s/ Paul R. Genender*

Bradley J. Bondi (admitted *pro hac vice*)     Paul R. Genender (Texas Bar No. 00790758)
bradbondi@paulhastings.com                 paulgenender@paulhastings.com
PAUL HASTINGS LLP                          Manuel G. Berrelez (Texas Bar No. 24057760)
2050 M Street NW                           manuelberrelez@paulhastings.com
Washington, DC 20036                       PAUL HASTINGS LLP
Telephone: (202) 551-1700                  2001 Ross Avenue, Suite #700-168
Facsimile: (212) 551-0201                  Dallas, Texas 75201
                                           Telephone: (972) 936-7500
                                           Facsimile: (972) 936-7501

Matthew P. Previn (admitted *pro hac vice*)
matthewprevin@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6049
Facsimile: (212) 551-0201

*Counsel for Plaintiffs Acima Digital, LLC and Acima Holdings, LLC*


*/s/ David W. Klaudt*                           */s/ Tierney Smith*
David W. Klaudt (Texas Bar No. 00796073)       Tierney Smith*
GREENBERG TRAURIG LLP                       GOODWIN PROCTER LLP
2200 Ross Avenue, Suite 5200               1900 N. St. NW
Dallas, Texas 75201                        Washington, DC 20036
Telephone: (214) 665-3616                  Telephone: (206) 346-4019
David.klaudt@gtlaw.com                     tierneysmith@goodwinlaw.com
                                           *admitted *pro hac vice*

*Counsel for Plaintiff Aaron Allred*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 28th day of October, 2024, a copy of the foregoing was served on all counsel of record via the Electronic Filing System.

<u>*/s/ Paul R. Genender*           </u>

Paul R. Genender