# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| ACIMA DIGITAL, LLC, *et al.*, <br><br> *Plaintiffs* <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> *Defendants*. | Case No. 4:24-cv-00662-SDJ |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**


# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    Venue is improper. ............................................................................................................ 1

    II.    There is no basis for injunctive relief. ............................................................................. 2

        A.    There is no basis for an injunction halting the CFPB's pending enforcement action... 2

        B.    There is no basis for an injunction prohibiting hypothetical future CFPB actions. ...... 5

    III.    The Court should decline to consider Plaintiffs' request for declaratory relief............ 6

    IV.    Plaintiffs' claims are not ripe. ......................................................................................... 9

CONCLUSION ............................................................................................................................. 10

**INTRODUCTION**

Plaintiffs' response confirms what was evident from their complaint: Faced with a "clearly imminent" (their words, *see* Am. Compl. ¶ 73) civil law enforcement against them in their home state of Utah, Plaintiffs filed this preemptive action against the Consumer Financial Protection Bureau in Texas and reformatted their defenses as requests for declaratory relief. This improper anticipatory suit should be dismissed for a host of reasons.

*One*, venue is improper. Plaintiffs, all based in Utah, challenge the CFPB's investigation and subsequent enforcement action filed in their home state. Unsurprisingly, they do not identify any part of those events—let alone a substantial part—that occurred in this district. *Two*, there is no basis for an injunction here. Plaintiffs do not refute that litigating their defenses to the enforcement action in that action gives them an adequate remedy at law. Instead, they claim they need an injunction to stop some future hypothetical actions. But such speculation is insufficient to establish standing for injunctive relief. *Three*, declaratory relief is not warranted here. Plaintiffs do not—and cannot—show that this action does anything more than burden this Court with their tactical attempt to have a court of their choosing rule on defenses that can be more efficiently adjudicated in the enforcement action. For this reason, the first-to-file rule also gives way. *Four*, Plaintiffs' claims are not ripe. Plaintiffs fail to show that they will suffer any hardship from having to litigate their defenses in the enforcement action, and most of their claims are not fit for judicial resolution. Accordingly, this case should be dismissed.

**ARGUMENT**

**I.      Venue is improper.**

Plaintiffs have not shown that a substantial part of the events or omissions giving rise to their claims occurred in this district such that venue is proper. *See* 28 U.S.C. § 1391(e)(1)(B). In determining that issue, this Court "looks to the defendant's conduct, and where that conduct took

place." *Parks v. AIG*, 2022 WL 17875810, at *4 (E.D. Tex. Dec. 22, 2022) (Jordan, J.). But Plaintiffs still do not allege that the CFPB engaged in any conduct in this district. *See* Opp. 6–8; Mot. 7–9. Venue is thus not proper here.

That conclusion is not altered by Plaintiffs' assertion (at 7) that "decisions pertaining to Acima are made in Plano." Plaintiffs contend that venue is proper in "the district where decisions were allegedly made." Opp. 7 (quoting *Warner v. Surefox Consulting LLC*, 2022 WL 526489, at *5 (N.D. Cal. Feb. 22, 2022)). But the case they cite refers to the *defendants*' decisions that the plaintiff challenged in that suit. *Warner*, 2022 WL 526489, at *4. And even if Plaintiffs' own decisions could count, Plaintiffs do not identify any "decisions underlying the complaint," *see* Opp. 7, that they made in this district. They assert that some corporate decisions "are" currently made in Plano, *id.* (citation omitted), but do not say any specific decision related to their claims was made there. Plaintiffs have thus failed to meet their burden to establish venue. *Parks*, 2022 WL 17875810, at *1 (plaintiff bears the burden to show venue is proper).[1]

## II. There is no basis for injunctive relief.

### A. There is no basis for an injunction halting the CFPB's pending enforcement action.

Plaintiffs cannot obtain an injunction against the CFPB's pending enforcement action because they have "an adequate remedy at law" and so "will not suffer irreparable injury if denied" an injunction against that action. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). Where "a party will have opportunity to raise its claims in the concurrent federal

---

[1] Nor does it matter that "corporate documents and records" are in Plano or that the CFPB would have to travel even if this case were in Utah. Opp. 7. That does not make venue proper here. While those facts can be relevant to whether a case should be transferred from one proper venue to another for the sake of convenience, they do not bear on whether venue is proper. Indeed, the only case Plaintiffs cite on this point does not address whether venue is proper but whether a case should be transferred from one proper venue to another. *See Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730–31 (N.D. Ill. 1997) (assessing whether to transfer venue in case where "venue is proper in both the transferor and transferee courts").

proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005). Plaintiffs have just that opportunity here.

In contending otherwise, Plaintiffs principally object that the enforcement action cannot afford them an adequate remedy for harms they face from "other investigations and administrative actions" that the CFPB might take.[2] Opp. 9. That's a red herring. To obtain an injunction *against the enforcement action*, Plaintiffs must show that there is no adequate remedy at law for the injuries they suffer *from that enforcement action*. Plaintiffs never clearly explain how the enforcement action supplies them an inadequate remedy in that regard.

Plaintiffs perhaps mean to suggest that they have no adequate remedy vis-à-vis the enforcement action because they are purportedly "being subjected to" actions that are "unconstitutional and exceed the CFPB's statutory authority," and "only an injunction may redress" that. Opp. 8. Not so, and courts routinely reject preemptive suits seeking to enjoin purportedly unconstitutional or otherwise unlawful federal-court enforcement actions. *See* Mot. 12 (citing cases). Tellingly, Plaintiffs do not cite a single case allowing such a preemptive suit. Instead, Plaintiffs rely (at 8) on a district court case enjoining an ongoing agency *administrative* proceeding challenged on constitutional grounds. But that case did not address whether a parallel federal court action would provide an adequate remedy at law—there was no parallel federal court action that could supply such a remedy.[3] Here, however, any harm Plaintiffs face from

---

[2] As explained in Section II.B below, Plaintiffs cannot obtain an injunction against those "other" actions either.

[3] Plaintiffs stray even farther afield when they cite (at 8-9) *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), to claim that "being subjected to unconstitutional agency authority" can be remedied only by an injunction. There, the Court held that two statutes did not implicitly divest federal

3

"being subjected to" the CFPB's enforcement action in Utah can just as easily (indeed, more easily) be remedied by the Utah court. Accordingly, there is no question that litigation under the Federal Rules of Civil Procedure in the District of Utah provides Plaintiffs an adequate remedy for that alleged harm.

Nor do Plaintiffs offer any reason why the pending enforcement action fails to supply an adequate remedy for their other alleged harm—"reputational and commercial injury" caused by the "ongoing shadow cast by" the CFPB's enforcement action, Opp. 10. To the extent an injunction would remove the "ongoing shadow cast" by the CFPB's enforcement action, it would be because a court vindicated Plaintiffs' positions here. But Plaintiffs can seek such vindication (likely more expeditiously) by moving to dismiss the enforcement action.

Finally, principles of comity reinforce that an injunction is not appropriate here. Plaintiffs claim (at 11) that because they allege the "CFPB is acting beyond its constitutional and statutory authority . . ., injunctive relief should issue even if the agency would prefer to litigate the action in a different venue" (read: Plaintiffs' home district). Plaintiffs cite no authority. Nor do they address the established principle that, when asking one federal court to enjoin a coordinate federal proceeding, comity dictates that "such injunctions should be granted only in the most unusual cases." Mot. 11–12 (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)). This is not such a case; nor do Plaintiffs argue that it is.

---

district courts of jurisdiction to consider collateral constitutional challenges to administrative adjudications. *See* 598 U.S. at 184. It did not address whether a challenger could meet the factors necessary to obtain an injunction against such an adjudication. *See generally id.*; *Leachco, Inc. v. CPSC*, 103 F.4th 748, 758 (10th Cir. 2024) (denying an injunction and explaining that "*Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief.").

4

### B. There is no basis for an injunction prohibiting hypothetical future CFPB actions.

Plaintiffs also cannot obtain an injunction barring the CFPB from taking hypothetical future action against them because they lack standing to seek such relief.[4] To have standing, Plaintiffs must show that a future injury is "*certainly* impending." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (emphasis in original). But Plaintiffs contend only that "nothing prevents" the CFPB from dismissing its current enforcement action and filing a new one, and that the CFPB has not promised to refrain from future enforcement proceedings. Opp. 13. That falls far short of showing that the CFPB will actually and imminently follow that course.

Plaintiffs also miss the mark in asking this Court to "infer[]" that, because the CFPB has brought one enforcement action against them, there is a "reasonable likelihood" that the CFPB will bring another. Opp. 12. There is no basis for such an inference. In fact, the Fifth Circuit has held that where an agency brings an enforcement suit, that "suggests that *future* enforcement is unlikely." *Walmart, Inc. v. DOJ*, 21 F.4th 300, 313 (5th Cir. 2021) (emphasis in original). And the case Plaintiffs cite for their opposite inference says nothing about an agency's likelihood of taking repeated actions, nor does it address whether a future injury is sufficiently "imminent" to satisfy standing requirements. *See SEC v. Gordon*, 2021 WL 5086556, at *8 (N.D. Tex. Nov. 1, 2021) (addressing whether SEC could establish "reasonable likelihood" that a defendant would commit future violations as required for SEC to obtain injunction in enforcement action). Plaintiffs' "mere allegations of possible future injury will not suffice" to establish standing. *Hegar*, 86 F.4th at 1081 (citation omitted).

---

[4] Plaintiffs do not dispute, and therefore concede, that they lack standing to seek an injunction against the CFPB's now-completed investigation. *See* Opp. 12–13; *see also* Mot. 13–14.

## III. The Court should decline to consider Plaintiffs' request for declaratory relief.

Plaintiffs fail to show that this Court should exercise its discretion to consider Plaintiffs' requested declaratory relief. Such relief is not warranted based on the Declaratory Judgment Act's purposes and the Fifth Circuit's *Trejo* factors. The "first-to-file" rule does not suggest otherwise.

1. Contrary to Plaintiffs' argument (at 14), merely asserting constitutional claims does not render a declaratory action proper. As Plaintiffs acknowledge, the Declaratory Judgment Act's purpose is to allow "parties, threatened with liability, *but otherwise without a satisfactory remedy*, an early adjudication of an actual controversy." Opp. 14 (emphasis added). But Plaintiffs have a "satisfactory remedy": they can raise their claims as defenses in the enforcement action. In reality, Plaintiffs did not file this case seeking legal clarity in the face of uncertain litigation but to litigate their defenses to an imminent enforcement action in a forum of their choosing and improperly burden this Court. Such anticipatory suits are not a "proper use of the declaratory judgment procedure." *See Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976). Nor would entertaining this action serve *any* purpose given the pending Utah action.

2. The *Trejo* factors further confirm that declaratory relief is not appropriate here. Start with efficiency. Hearing this case would disserve judicial economy because it would lead to duplicative or piecemeal litigation. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003) (A "federal district court should avoid duplicative or piecemeal litigation where possible"). As the CFPB explained in detail in its motion, the Utah action could proceed to some extent even if Plaintiffs prevailed on all their claims here. Mot. 18. Plaintiffs dispute that (at 18) by baldly asserting that "the *entire lawsuit* in Utah is improper." But Plaintiffs have offered no substantive response to the CFPB's explanation that at least parts of the Utah litigation would still proceed even if Plaintiffs fully prevailed here.

6

Plaintiffs also argue (at 19) that efficiency counsels against dismissal because "parties and witnesses"—namely, Acima's parent company and some of Acima's employees—are present in this forum. But the parent company is not a party, and it is unclear how many of those employees would be witnesses. What is clear, however, is that all three Plaintiffs (i.e., all three defendants in the Utah action) reside in Utah, including Mr. Allred—Acima's founder, former CEO, and likely key witness. The efficiency factors thus favor declining to hear this suit.[5]

The fairness factors also support dismissal because this is an improper anticipatory suit. Plaintiffs contend (at 16–17) that declaratory actions necessarily involve the anticipation of litigation and some forum selection—and that their suit properly fits that mold. But that superficial gloss ignores the facts of this case. After months of negotiations, the CFPB informed Plaintiffs that it was preparing to file its enforcement action and requested a response to its settlement offer by July 23. Am. Compl. ¶¶ 64–70. The day before that deadline, Acima filed this suit. *Id.* ¶ 74. That is "clear evidence of an anticipatory filing to 'pre-empt the timing and forum of [the natural plaintiff's] underlying suit.'" *See Sally Holdings LLC v. Bd. Ams., Inc.*, 2023 WL 4424599, at *5 (E.D. Tex. July 10, 2023) (Jordan, J.) (citation omitted). Then there's the fact that Plaintiffs' requested declarations are merely rebuttals to the CFPB's affirmative case. *See Capco Int'l, Inc. v. Haas Outdoors, Inc.*, 2004 WL 792671, at *4 (N.D. Tex. Apr. 9, 2004) (finding fairness factors favored dismissal where declaratory plaintiffs' proposed declarations were "phrased as inverted elements" of the natural plaintiff's claims). Put together, this is not merely

---

[5] While the efficiency factors also consider "whether there is a pending state action" in which the disputed matters may be litigated, Plaintiffs are wrong to contend (at 16) that the absence of any parallel *state* lawsuit means that this factor favors maintaining this action. Instead, when faced with parallel *federal* cases, courts in the Fifth Circuit consider whether "all issues raised in the declaratory action could be adjudicated in the parallel federal action." *Watkins Strategy & Res. Grp., LLC v. WLC, LLC*, 433 F. Supp. 2d 778, 782 (S.D. Miss. 2006) (collecting cases). They can here, and so this factor favors declining to consider this declaratory action.

7

an anticipatory suit, but a race to res judicata in the natural defendants' preferred forum—and thus an *improper* anticipatory suit that should be dismissed. *See Federated Rural Elec. Ins. Exch. v. Jourdan*, 2017 WL 1399608, at *3 (E.D. La. Apr. 19, 2017) (finding declaratory plaintiff's "race to res judicata" favored dismissal).[6]

3. That this action is an improper race to res judicata also means that the first-to-file rule does not support maintaining jurisdiction over this suit. *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (disregarding first-to-file rule where first-filed case was "motivated by a 'race to the courthouse'"). Indeed, Plaintiffs acknowledge that the first-to-file rule does not apply when—as the timeline shows occurred here—a natural plaintiff delays filing suit because it believed settlement discussions continued. Opp. 20 (citing *Apache Corp. v. N.Y.C. Employees' Ret. Sys.*, 2008 WL 1775221 (S.D. Tex. Apr. 15, 2008)).

Plaintiffs' counter (at 20) is to ignore Fifth Circuit precedent and instead attack a strawman, namely that the CFPB has not shown "forum shopping." But no showing of forum shopping is necessary. Mot. 20–21. Regardless, the evidence here does suggest improper forum shopping. Plaintiffs have admitted that they chose this district (instead of the district where they reside) because of the Fifth Circuit's "familiar[ity] with constitutional challenges to the CFPB's funding structure." Acima Mot. to Transfer or, in the Alternative, to Stay at 8, *CFPB v. Acima Holdings, LLC*, No. 2:24-cv-00525-DBB (D. Utah), ECF No. 11 (citing since-reversed case in which Fifth Circuit held CFPB's funding unconstitutional). Choosing a court to get particular judges "*is* forum shopping" even if a litigant claims it did so because of those judges'

---

[6] For this reason, Plaintiffs' concerns that dismissing this action would mean that natural defendants could never bring a declaratory action in the enforcement context are unfounded. This is not a case where the declaratory plaintiff genuinely needed clarification of the law without waiting to be sued. This is the paradigmatic anticipatory suit that is "disfavored" in the Fifth Circuit. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983).

8

"familiar[ity]" with the issues. *LEAM Drilling Sys., LLC v. C&J Spec Rent Servs., Inc.*, 2019 WL 1084039, at *3 (S.D. Tex. Mar. 7, 2019) (emphasis in original).[7]

### IV.  Plaintiffs' claims are not ripe.

This Court should also dismiss Plaintiffs' claims for the independent reason that they are unripe: Plaintiffs can establish neither that they will suffer hardship absent review by this Court nor that their claims are fit for judicial resolution. *See* Mot. 21–26.

Plaintiffs claim (at 23–24) that defense costs and reputational harm cause them hardship "sufficient for ripeness." But Plaintiffs do not show they will suffer this "hardship" *from this Court withholding consideration of Plaintiffs' claims*. They will not. That is because Plaintiffs can obtain judicial resolution of all the issues they raise here in the enforcement action. As the Fifth Circuit has held, "the existence of the [parallel government enforcement action] eliminates, or at least greatly reduces, the hardship that will be placed on [the natural defendant] by withholding consideration" of the declaratory action. *See Walmart Inc.*, 21 F.4th at 312. Plaintiffs wholly ignore that inconvenient truth. *See* Opp. 23–24. And this lack of any hardship is alone sufficient to find Plaintiffs' claims unripe. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715–18 (5th Cir. 2012) (concluding case was not ripe without addressing fitness prong where declaratory plaintiff "has not satisfied the hardship prong of the ripeness inquiry").

Plaintiffs' claims are also not fit for judicial review for multiple reasons, including that they do not challenge any "sufficiently final" agency action. *See* Mot. 25–26; *see also Consensys Software, Inc. v. SEC*, 2024 WL 4438969, at *2–3 (N.D. Tex. Sept. 19, 2024) (dismissing

---

[7] Citing no authority, Plaintiffs argue that the first-to-file rule should apply differently to enforcement actions than to private disputes. Opp. 21. It's unclear why that should be so. Greenlighting preemptive suits in the government enforcement context would seriously distort settlement incentives, invite gamesmanship, and discourage law enforcement agencies from exhausting the possibility of settlement before bringing suit.

9

preemptive suit seeking to enjoin SEC enforcement action as unripe). Plaintiffs do not address this and therefore waive any argument to the contrary. *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("failure to brief an argument" in opposition to motion to dismiss "waive[s] that argument"). That alone is also sufficient to find their claims unripe.

And while Plaintiffs argue primarily that their statutory claims are fit for judicial review because they present pure legal questions, they are mistaken. Far from being purely legal, Plaintiffs' statutory and related fair-notice claims are highly fact-dependent for the reasons explained in the Bureau's motion. Mot. 23–25. Plaintiffs do not address the facts the CFPB's motion explains are relevant and instead point out that a court, in ruling on a motion to dismiss an enforcement suit, needed no fact-finding to conclude that another company's lease-to-own agreements were not "credit" under federal consumer financial law. *See CFPB v. Snap Fin. LLC*, 2024 WL 3625007 (D. Utah Aug. 1, 2024). But that does not show that whether a product is credit is a "purely legal" question; no fact-finding was necessary there only because the court could take the facts alleged in the complaint as true. *Id.* at 4, 8. Here, this Court is not similarly positioned to determine whether Acima's products are credit because Plaintiffs' claims seek a determination based on their own version of the facts—not the version of the facts that the CFPB contends show that Plaintiffs' product is in fact credit. *See* Mot. 24 (detailing material facts absent from Plaintiffs' complaint). Thus, to the extent this matters—since Plaintiffs will not suffer any hardship from dismissal and are not challenging any final agency action—Plaintiffs' statutory and related due process claims are not fit for judicial review.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss this case.

10

DATED:  November 25, 2024                           Respectfully submitted,

SETH FROTMAN
General Counsel

STEVEN Y. BRESSLER
Deputy General Counsel

KRISTIN BATEMAN
Assistant General Counsel

 *s/ Derick Sohn*
DERICK SOHN
JOSEPH FRISONE
Senior Counsel
Consumer Financial Protection Bureau
1700 G St., NW
Washington, DC 20552
Derick.Sohn@cfpb.gov
Joseph.Frisone@cfpb.gov
(202) 435-7873 (Sohn)
(202) 435-9287 (Frisone)

11